**EQUAL EMPLOYMENT OPPOR-
TUNITY COMMISSION,**
Plaintiff–Appellee,

v.

**JOHNSON & HIGGINS, INC.,**
Defendant–Appellant.

No. 1208, Docket 95–6216.

United States Court of Appeals,
Second Circuit.

Argued March 4, 1996.

Decided Aug. 8, 1996.

John F. Cannon, New York, New York (Robin D. Fessel, Sullivan & Cromwell, Andrew D. Rotstein, of counsel), for defendant-appellant.

Karen M. Moran, Equal Employment Opportunity Commission, Washington, DC (C. Gregory Stewart, General Counsel, Gwendolyn Young Reams, Associate General Counsel, Vincent J. Blackwood, Assistant General Counsel, Equal Opportunity Commission, Washington, DC), for plaintiff-appellee.

Before: MINER, JACOBS, and CABRANES, Circuit Judges.

JOSÉ A. CABRANES, Circuit Judge:

The question presented is whether the Age Discrimination in Employment Act of 1967 (the "ADEA" or "the Act"), 29 U.S.C. § 621 *et seq.*, is applicable to a firm's mandatory retirement policy for its Board of Directors where the directors are also full-time employees of the firm. Defendant-appellant Johnson & Higgins, Inc. ("J & H") appeals from a July 7, 1995, order of the United States District Court for the Southern District of New York (Leonard B. Sand, *Judge*) granting summary judgment in favor of the Equal Employment Opportunity Commission ("EEOC") based on its finding that J & H's retirement policy for members of its Board of Directors violated the ADEA, and enjoining J & H from further enforcement of the policy.

## I. BACKGROUND

The following facts—drawn primarily from the district court's opinion—are undisputed. *See EEOC v. Johnson & Higgins, Inc.*, 887 F.Supp. 682 (S.D.N.Y.1995). J & H, an international insurance brokerage and employee benefits consulting firm, is a private corporation incorporated under New Jersey law with its principal place of business in New York City. Its charter and by-laws provide that the firm be managed by a Board of Directors ("the Board") consisting of at least twenty and no more than forty-four members. When the EEOC brought the present action in May 1992, J & H had thirty-five directors.

J & H's directors are nominated by the Chairman of the Board after consultation with other members, and must be elected by a two-thirds majority of the entire Board. Candidates are chosen exclusively from among the officers and senior managers of J & H or its subsidiaries. According to Board policy, a director is selected based on (1) his outstanding performance in senior managerial positions and (2) the Board's belief that his ability to contribute to J & H "in his or her current and possible future roles would be significantly enhanced by the added authority and status that a Directorship at J & H entails." A new director is required to tender a letter of resignation to become effective at the pleasure of two-thirds of the Board.

Although the J & H directorship is characterized somewhat differently by each party, it is undisputed that a person continues to perform his duties as an officer of J & H after he has been named a director. In a letter to the EEOC regarding the instant matter, J & H described a director's role as follows:

[Directors] are given the opportunity to become owner-managers of J & H because the existing owner-managers believe that as Board members they will contribute in a material way to the future success of the firm. By whatever route an individual becomes a Director, the understanding is *that he will continue in J & H's active service as an officer and employee of J & H or one of its subsidiaries.*

(Emphasis added.) Directors receive certain new duties as a result of their election to the Board, including mandatory service on various committees and attendance at Board meetings. J & H emphasizes that an officer's position at the firm is altered in many intangible ways by elections to the Board. Gardner Mundy, the General Counsel and Senior Vice President, notes:

[A]t J & H when someone becomes a Director, and thus a member of the relatively small group that owns and manages a world-wide organization employing over eight thousand people, virtually everything changes in ways too numerous and subtle to catalog. One's personal stature and credibility within the organization, the prestige associated with one's existing position in the organization, and one's ability to get things done within and without one's particular area of responsibility, are all enormously enhanced. When individuals are offered the opportunity to become Directors of J & H it is because the existing Directors are persuaded that they will contribute to the future success of the firm as Board members in ways they could not as officers and employees only. If status as a Director is accepted, "employment" continues, but it becomes but an aspect of the fundamentally entrepreneurial relationship that the Directors have among themselves and to the firm as a whole.

J & H's directors report to one of the six senior Board members for annual performance reviews. A director's compensation—consisting of a certain percentage of the firm's profits determined annually by the Directors' Compensation Committee—is based primarily on these individual performance reviews.

According to its charter, J & H shares may not be owned by any person "other than an individual who is an officer, director or employee of the Corporation and actively engaged in its service." Indeed, J & H stock is owned almost exclusively by its directors.[1] Under the firm's by-laws, each J & H director must own at least 500 shares of J & H stock, and a director who ceases to own 500 shares automatically loses his seat on the Board. Additional stock is also made available to individual directors during their tenure. If a director leaves the Board for any reason, including retirement, he is required to surrender his stock, which is then allocated to the others.

A retiring director must surrender his stock pursuant to a purchase contract and consulting and non-competition agreement referred to by J & H as the "Ten–Year Contract." Under this contract, J & H promises to pay the retiring director the equivalent of the dividends that would have been payable for the next ten years if the director had continued to hold the stock, and the outgoing director promises not to compete with J & H and to be available as a consultant if necessary. When a director retires pursuant to this policy, he not only ceases to be a director, but he also ceases to be a stockholder, officer, and employee of the company. According to Mundy, "retirement as a director entails retirement in all other capacities as well."

J & H's mandatory retirement policy for its Board of Directors—adopted unanimously by the Board in 1983 by an amendment to the by-laws—provides that:

the normal retirement date for Directors [shall] be the earlier of (a) the end of the year in which the age 62 is attained or (b) the end of the year in which age 60 is attained and 15 years of service on the Board is completed. With respect to (b), in cases of corporate need determined by the Chairman and approved by the Executive Committee, a Director may continue on a year-to-year basis up to but not beyond the end of the year in which age 62 is attained.

---

**1.** Since 1993, the Board has issued a small percentage of its stock to a few key employees who are not directors.

The EEOC first became aware of J & H's mandatory retirement policy when a director, forced to resign for reasons unrelated to the policy, filed a charge of age discrimination. In the course of its investigation, the EEOC learned of the mandatory retirement policy, and on May 21, 1992, it informed J & H that it was under investigation for its alleged violation of the ADEA. Although no retired or current directors claimed to be aggrieved by the alleged discriminatory practices, the EEOC pursued the ADEA investigation on its own initiative. On June 19, 1992, an EEOC investigator informed J & H's counsel that the EEOC had determined that J & H's mandatory retirement policy violated the ADEA.[2] On July 2, 1992, at J & H's request, its representatives met with Harold Wilkes, an EEOC enforcement manager, and with Kevin Marrazzo, an EEOC trial attorney, to discuss the allegations. The EEOC issued a "Letter of Determination" on July 8, 1992, indicating that it found reasonable cause to believe that J & H's mandatory retirement policy for directors violated the ADEA, and inviting J & H, pursuant to 29 U.S.C. § 626(b), to "conciliate" the matter to avoid a lawsuit. In a letter dated July 23, 1992, J & H reiterated its position that its retirement policy did not violate the ADEA:

> [W]e may make a formal request that you reconsider your Letter of Determination on the ground that, although under the challenged policy a retiring Director's employment terminates along with his directorship and stock ownership at age 60 (or 62), the policy is driven by the directorship and stock-ownership factors and thus involves a "differentiation based on reasonable factors other than age" (ADEA, Sec. 4(f)(1)). At this point, however, J & H is willing to conciliate if some basis can be found that will both vindicate the Commission's interpretation of the ADEA and accommodate J & H's desire to manage its directorships and stock ownership in accordance with the needs of its business, as it has since the J & H partnership incorporated itself under New Jersey law in 1899.

In a letter to J & H, dated September 15, 1992, the EEOC outlined its procedures and requirements for conciliation, including a request for the production of the records of former directors' salaries. J & H responded by letter on September 16, 1992, indicating that it did not regard the EEOC's September 15 letter as "an acceptable response from an agency of the United States to a corporate citizen whose almost one-hundred-year-old arrangements for the governance of its ownership and management affairs are being challenged by the agency." In a letter dated December 8, 1992, the EEOC again sought information necessary for conciliation; J & H responded that it was "unwilling" to provide the "exact" information.

The EEOC commenced this action on August 5, 1993, alleging that the Board's mandatory retirement policy for directors violated the ADEA and seeking, *inter alia*, a permanent injunction enjoining J & H from enforcing the alleged discriminatory practice, and reinstatement, back wages, and prejudgment interest for directors adversely affected by the policy.

In its opinion dated June 12, 1995, the district court granted the EEOC's motion for partial summary judgment on the issue of liability, reserving judgment on the question of damages. *EEOC v. Johnson & Higgins,* 887 F.Supp. 682. First, the court found that the ADEA was applicable to J & H's mandatory retirement policy insofar as J & H's directors were also "employees" for the purposes of the ADEA: "J & H's policy not only forces a Director to give up a directorship at age 60 or 62, but it also terminates one's status as officer and employee of the corporation." *Id.* at 685. Similarly, while recognizing some merit in J & H's argument that its owners-officers-directors should be viewed as *de facto* partners—outside the scope of the ADEA—it ultimately rejected that view, finding that this court's opinion in *Hyland v. New Haven Radiology Associates,* 794 F.2d 793 (2d Cir.1986), prevented it from inquiring beyond J & H's choice of the corporate form when determining the applicability of the Act. The court was similarly unper-

**2.** Pursuant to 29 U.S.C. § 631(c)(1), it would be permissible for J & H to require mandatory retirement at *age 65* for employees who hold executive and policy making positions for the two years prior to retirement and are entitled to immediate, non-forfeitable annual retirement benefits over $44,000.

suaded by J & H's argument that its retirement policy·was permissible because it was based on "reasonable factors other than age," see 29 U.S.C. § 623(f)(1). The court concluded that this defense was unavailable because J & H's retirement policy used age "as its sole limiting criterion." *Id.*

The district court also concluded that the EEOC (1) was authorized to bring suit challenging J & H's mandatory retirement policy despite opposition by J & H's current and retired directors; and (2) had satisfied its statutory duty to conciliate prior to bringing suit. *Id.* at 688–89. Accordingly, the court entered summary judgment for the EEOC on the issue of liability and granted permanent injunctive relief, enjoining J & H

> from retiring employee-directors at age 60 or 62 pursuant to its present unlawful retirement policy . . .; from requiring new employee-directors to sign and enter into an agreement with [J & H] to retire pursuant to the agreement at any age in violation of the ADEA; [and] from retiring any employee within the protected class pursuant to that employee's age.

The court also directed J & H to "rescind its retirement policy for employee-directors" and "file and serve on [the EEOC] by a date subject to further order of this Court a modified retirement policy for its employee-directors that complies with the provisions of the ADEA."

J & H appeals, arguing that (1) the EEOC did not meet its statutory duty to "conciliate" before bringing suit challenging J & H's mandatory retirement policy; (2) the EEOC had no authority to bring the action because it did not do so on behalf of any current or retired director aggrieved by the policy; (3) the directors' retirement policy is not covered by the ADEA because they are not "employees" within the meaning of the statute; (4) the retirement policy does not violate the ADEA because its differentiation among employees is based on reasonable factors other than age; and (5) in any event, the district court abused its discretion in entering the injunction.

## II. DISCUSSION

### A. *Standard of Review*

■ Under 28 U.S.C. § 1292(a)(1), an immediate appeal may be taken from a district court's interlocutory order granting an injunction. To the extent that the district court fully adjudicated the plaintiff's substantive claims in ordering injunctive relief, it is proper for a court of appeals to review the merits of the case "in precisely the same manner as [it] would . . . on appeal from a final judgment." *HBE Leasing Corp. v. Frank,* 48 F.3d 623, 633 (2d Cir.1995).

■ We review the district court's grant of summary judgment in favor of the EEOC *de novo,* in order to determine whether there is a genuine issue of material fact for trial and whether the EEOC is entitled to judgment as a matter of law. *See Healy v. Rich Prods. Corp.,* 981 F.2d 68, 72 (2d Cir.1992); *see also Johnson v. New York,* 49 F.3d 75, 78 (2d Cir.1995). The court's award of injunctive relief may be reversed only for an abuse of discretion or for a clear error of law. *Malarkey v. Texaco, Inc.,* 983 F.2d 1204, 1214 (2d Cir.1993).

### B. *The EEOC's Statutory Duty to Conciliate*

■ As a preliminary matter, J & H argues that the EEOC failed to satisfy its statutory duty to attempt conciliation before filing a formal complaint. Pursuant to 29 U.S.C. § 626(b), the EEOC must "attempt to eliminate the discriminatory practice or practices alleged, and to effect voluntary compliance . . . through informal methods of conciliation, conference, and persuasion" before it can institute an action in federal court. The EEOC fulfills its duty to conciliate before initiating litigation if it

> 1) outlines to the employer the reasonable cause for its belief that the employer is in violation of the Act, 2) offers an opportunity for voluntary compliance, and 3) responds in a reasonable and flexible manner to the reasonable attitude of the employer.

*EEOC v. New Cherokee Corp.,* 829 F.Supp. 73, 80 (S.D.N.Y.1993) (quoting *EEOC v. KDM School Bus Co.,* 612 F.Supp. 369, 374 n. 17 (S.D.N.Y.1985)); *see also EEOC v. Prudential Fed. Sav. & Loan Ass'n,* 763 F.2d 1166, 1169 (10th Cir.), *cert. denied,* 474 U.S. 946, 106 S.Ct. 312, 88 L.Ed.2d 289 (1985);

*Marshall v. Sun Oil Co. (Delaware)*, 605 F.2d 1331, 1337–39 (5th Cir.1979). If the defendant refuses the invitation to conciliate or responds by denying the EEOC's allegations, the EEOC need not pursue conciliation and may proceed to litigate the question of the employer's liability for the alleged violations. *New Cherokee Corp.*, 829 F.Supp. at 81 (citing *Marshall v. American Motors Corp.*, 475 F.Supp. 875, 878–79 (E.D.Mich. 1979)); *cf. Sun Oil Co.*, 605 F.2d at 1335 (referring to the Secretary of Labor's obligations under the ADEA (prior to the EEOC taking over these obligations), the court stated that "to fulfill his duty to act reasonably under the circumstances the Secretary's conduct when dealing with a repentant wrongdoer will differ from his conduct with an intransigent one."). By the time the obligation to conciliate arises pursuant to 29 U.S.C. § 626(b), the EEOC has already conducted an initial investigation and "has a reasonable basis to conclude that a violation of the [ADEA] has occurred or will occur." 29 C.F.R. § 1626.15(b) (1995). The conciliation period allows the employer and the EEOC to negotiate how the employer might alter its practices to comply with the law, as well as how much, if any, the employer will pay in damages.

The EEOC satisfied its duty to conciliate in the instant case. On July 8, 1992, the agency issued its letter of determination, notifying J & H that it had reasonable cause to believe that its mandatory retirement policy violated the ADEA and inviting J & H "to effect voluntary compliance with the requirements of the Act through informal methods of conciliation." Nevertheless, J & H maintained that its policy did not violate the law. It also refused to accommodate the EEOC's repeated requests for information about the salaries of retired directors in order to negotiate the question of damages. Inasmuch as the EEOC informed J & H of its basis for

concluding that the firm's policy violated the ADEA and provided it the opportunity to conciliate, it was not obligated to do more in the face of J & H's insistence that its policy was not unlawful. Indeed, it was entirely appropriate for the EEOC to end conciliation efforts at that point and file suit so the courts could determine whether J & H's policy violated the Act.

**C. *EEOC's Authority to Bring an Action***

J & H argues that because none of its current or retired directors filed a charge with the EEOC challenging the mandatory retirement policy and none supports the EEOC's suit against J & H, the EEOC has no authority to bring the present action. Its argument is twofold: (1) the directors have expressly waived their putative individual claims against J & H under the ADEA, barring the EEOC from bringing suit on their behalf; and (2) the EEOC has no authority to enforce the ADEA under these circumstances.

First, J & H argues that affidavits submitted by its former directors opposing the EEOC's action against the firm constitute valid waivers of any ADEA claim by the directors' against their employer. This, J & H claims, bars the EEOC from pursuing the present suit. In support of its argument, J & H points to the Older Workers Benefit Protection Act ("OWBPA"), 29 U.S.C. § 626(f), as amended, which permits an individual to knowingly and voluntarily waive his right to sue his employer under the ADEA in certain circumstances. The affidavits signed and submitted by J & H's current and former directors, however, do not appear to satisfy the statutory criteria for a valid waiver, as set forth in 29 U.S.C. § 626(f)(1).[3]

---

**3.** Section 626(f)(1) provides, in relevant part,

An individual may not waive any right or claim under this chapter unless the waiver is knowing and voluntary. Except as provided in paragraph (2) [dealing with settlement of formal charges filed with the EEOC], a waiver may not be considered knowing and voluntary unless at a minimum—

(A) the waiver is part of an agreement between the individual and the employer that

is written in a manner calculated to be understood by such individual . . . ;

(B) the waiver specifically refers to rights or claims arising under this chapter;

. . .

(E) the individual is advised in writing to consult with an attorney prior to executing the agreement;

Notably, the affidavits do not reference the specific rights or claims that the directors purport to waive; nor do they include the required provision permitting revocation of the waiver within seven days. Furthermore, even if we assume that the directors' waivers conform to all statutory requirements and are otherwise valid, the OWBPA specifically provides that "[n]o waiver agreement may affect the Commission's rights and responsibilities to enforce this chapter." *Id.* § 626(f)(4). Accordingly, if the EEOC has the authority to enforce the ADEA where there is no director willing to join the suit (an issue we address below), that authority cannot be altered by a waiver of the rights of a private party—even a private party with a direct interest in the subject of concern to the EEOC.

This brings us to the question of the scope of the EEOC's enforcement authority under the ADEA where no director who has retired under the mandatory policy has filed a charge with the EEOC, and indeed, none supports the lawsuit. Pursuant to 29 U.S.C. § 626, the EEOC may commence actions in district court to obtain both legal and equitable relief. Furthermore, under § 626(b), the ADEA specifically incorporates the enforcement provisions of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.* Those provisions endow the EEOC with broad enforcement powers. Section 16(c) of the FLSA, 29 U.S.C. § 216(c), authorizes the EEOC to bring actions on behalf of aggrieved employees and to seek relief including back wages and liquidated damages. Under section 17, 29 U.S.C. § 217, the EEOC has the separate and independent power to investigate possible violations and to institute injunctive proceedings. *See Brock v. Superior Care, Inc.,* 840 F.2d 1054, 1062–63 (2d Cir.1988). Under the EEOC's own regulations, the Commission has the power to bring an action even when the aggrieved party does not wish to proceed. *See* 29 C.F.R. § 1626.13 (1995) ("Because the

Commission has independent investigative authority, *see* § 1626.4, it may continue any investigation and may secure relief for all affected persons notwithstanding a request by a charging party to withdraw a charge.").

Many courts have acknowledged the EEOC's independent authority to bring suit against an employer. In a case exempting the EEOC from the traditional rules of class certification, the Supreme Court noted that the EEOC has the authority to bring suit independent of any private plaintiff's rights: "[T]he EEOC is not merely a proxy for the victims of discrimination.... Although [it] can secure specific relief, such as hiring or reinstatement ..., on behalf of discrimination victims, the agency is guided by 'the overriding public interest in equal employment opportunity ... asserted through direct Federal enforcement.'" *General Tel. Co. of the Northwest, Inc. v. EEOC,* 446 U.S. 318, 326, 100 S.Ct. 1698, 1704, 64 L.Ed.2d 319 (1980) (quoting 118 Cong. Rec. 4941 (1972)). Also, in *dicta* the Court has stated that "the EEOC's role in combating age discrimination is not dependent on the filing of a charge; the agency may receive information concerning alleged violations of the ADEA from any source, and it has independent authority to investigate age discrimination." *Gilmer v. Interstate/Johnson Lane Corp.,* 500 U.S. 20, 28, 111 S.Ct. 1647, 1653, 114 L.Ed.2d 26 (1991) (quotation marks omitted).

■ J & H does not dispute the EEOC's broad power to *investigate* discrimination in the absence of an official charge or its authority to proceed with its suit in the public interest after the employee who originally filed the charge has settled. However, it seeks to distinguish those circumstances from the instant case—in which J & H claims there is no aggrieved party at all. This argument has some appeal, inasmuch as it appears anomalous that the EEOC should be authorized to bring suit on behalf of individuals who do not believe themselves to be

---

(F)(i) the individual is given a period of at least 21 days within which to consider the agreement;

. . .

(G) the agreement provides that for a period of at least 7 days following the execution of

such agreement, the individual may revoke the agreement, and the agreement shall not become effective or enforceable until the revocation period has expired.

victims of discrimination and who seem to have no interest in pursuing a suit against their employer. Nonetheless, even if J & H's current and former directors are pleased with the policy now in force, and may indeed benefit from a generous retirement package, that does not mean that the policy has not caused or will not in the future cause some tangible injury. Significantly, the retirement policy prevents any employee over the age of 62 from ever being considered for a directorship and requires prospective directors to choose between early retirement or forfeiting a directorship.

We do not find it significant that no J & H employee has filed a charge with the EEOC. Other courts have found that the EEOC may file suit where a charge was not filed by the affected employee. In *EEOC v. American & Efird Mills, Inc.*, 964 F.2d 300, 304 (4th Cir.1992), the Fourth Circuit stated that "[u]nlike the limited authority given the EEOC under Title VII ... the ADEA gives the EEOC authority to investigate *and enforce* independent of individual employee charges." (Emphasis added.) Similarly, in *EEOC v. Air Line Pilots Ass'n*, 885 F.Supp. 289, 292–93 (D.D.C.1995), a district court held that the EEOC had independent authority to file a civil suit in its own name when it learned of an additional instance of discrimination through its investigation of a separate charge filed with the agency. *See also EEOC v. Reichhold Chemicals, Inc.*, 700 F.Supp. 524, 527 (N.D.Fla.1988) ("[W]here the EEOC, in the course of investigating a charge of discrimination, develops facts which lead it to believe that a separate, uncharged ... form of discrimination has occurred, it may ... file suit."). These are the precise circumstances before us. Accordingly, in light of the strong public interest in eradicating age discrimination for future J & H directors and the EEOC's broad statutory power to enforce the ADEA, we find that the EEOC has the authority to pursue the present suit against J & H despite the fact that no current or former director complains of the challenged policy.

## D. *The ADEA*

### 1. *Directors as Employees*

The issue here does not involve any disputed facts; there are no material facts in dispute. Rather, we are called on to determine the legal significance of the terms and conditions of a director of J & H for purposes of the ADEA. Accordingly, we review *de novo* the district court's finding that J & H directors are employees for the purposes of the ADEA.

■ J & H argues that even if the EEOC acted within its authority in filing suit, the ADEA does not apply to the retirement policy because its directors are not "employees" within the meaning of the statute. J & H claims that the owner-officer-directors are *de facto* partners, and should be treated as such for purposes of the Act. We have previously held that individuals properly classified as partners are exempt from the provisions of the ADEA. *Hyland v. New Haven Radiology Assocs.*, 794 F.2d 793, 797 (2d Cir.1986).

However, we also stated in *Hyland* that the partnership exemption is limited to actual *de jure* partnerships and would not be extended to closely-held corporations or other organizations whose structure resembles that of a partnership. There, we held that a plaintiff radiologist who was a corporate officer and director of a professional corporation in which there were only four stockholders, who divided profits and losses equally among themselves, was still an "employee" within the meaning of the ADEA, and we declined the defendants' invitation to disregard the chosen corporate form:

> The fact that certain modern partnerships and corporations are practically indistinguishable in structure and operation ... is no reason for ignoring a form of business organization freely chosen and established.... Having made the election to incorporate, they should not now be heard to say that their corporation is "essentially a medical partnership among co-equal radiologists."

*Id.* at 798. The court continued: "[W]here the individual involved is a corporate employee ... we hold that every such employee is 'covered' for purposes of the ADEA and that any inquiry respecting [his] partnership status would be irrelevant." *Id; see also John-*

son v. Cooper, Deans & Cargill, P.A., 884 F.Supp. 43, 45 (D.N.H.1994) (following Hyland in holding that a corporate defendant is precluded from arguing that it is entitled to be treated as a de facto partnership for purposes of 42 U.S.C. § 2000e(b)). But see Fountain v. Metcalf, Zima & Co., P.A., 925 F.2d 1398, 1400–01 (11th Cir.1991) (declining to follow Hyland and applying "economic realities" of management, control, and ownership to determine whether member/shareholder of professional corporation should be treated as a de facto partner); EEOC v. Dowd & Dowd, Ltd., 736 F.2d 1177, 1178 (7th Cir.1984) (holding that economic realities should be examined to determine whether attorney-shareholders of a professional corporation are employees or partners for purposes of Title VII).

J & H argues that our opinion in Frankel v. Bally, Inc., 987 F.2d 86 (2d Cir.1993), suggests that the Hyland rule requiring strict adherence to the defendant's chosen form of organization has been undercut and that the court should look to common law principles and assess whether J & H's owner-director-officers should be treated as partners or employees. As the district court noted, see Johnson & Higgins, 887 F.Supp. at 687 n. 7, this argument is without merit. The Frankel decision, following the Supreme Court's holding in Nationwide Mutual Ins. Co. v. Darden, 503 U.S. 318, 112 S.Ct. 1344, 117 L.Ed.2d 581 (1992), decided that the question of whether an individual is an "employee" or an "independent contractor" within the meaning of the ADEA must be determined by reference to common law agency principles, and not to a more liberal construction aimed at achieving the Act's "remedial purposes." Frankel, 987 F.2d at 89–90. J & H correctly notes that the Hyland court began its analysis with a recitation of the "liberal construction" language subsequently rejected in Darden and Frankel, 987 F.2d at 90. However, Hyland did not turn on the court's adoption of an unduly broad definition of an "employee" or its deviation from the common law agency test for employment. While the court did discuss the definition of an employee and the various tests used to distinguish an employee from an independent contractor, that discussion was not directly related to its simple holding that the partnership exemption from the ADEA was unavailable to a corporate enterprise. "While those who own shares in a corporation may or may not be employees, they cannot under any circumstances be partners in the same enterprise because the roles are mutually exclusive." Hyland, 794 F.2d at 798. Accordingly, Hyland remains good law, and J & H is precluded from arguing that it is exempt from the ADEA because it is a de facto partnership.

While Hyland prevents J & H from claiming that its directors are "partners," that case does not preclude the argument that J & H should be exempt from the ADEA on account of their position as directors. The argument goes as follows: If J & H's directors are more akin to employers than employees, then they should be exempt from the provisions of the ADEA as directors, regardless of the inapplicability of the partnership exception. In other words, J & H's directors do not satisfy the definition of "employees" under the ADEA.

The ADEA's statutory definition of an "employee" sheds little light on this inquiry. Under 29 U.S.C. § 630(f), an employee is defined as "an individual employed by any employer." Indeed, the definition of an employee under analogous statutes such as Title VII and the FLSA is equally circular. See 42 U.S.C. § 2000e(f) (defining "employee" as "an individual employed by an employer"); 29 U.S.C. § 203(e)(1) (same). Accordingly, we turn to decisional law to aid us in our inquiry into whether and under what circumstances a director may be considered an "employee" for purposes of the ADEA.

Several courts have held that, although corporate directors are traditionally viewed as employers, they may also be considered employees depending upon their position and responsibilities within the corporation. In Chavero v. Local 241, 787 F.2d 1154, 1157 (7th Cir.1986), the Seventh Circuit held that "[a] director may accept duties that make him also an employee," noting that "the primary consideration is whether an employer-employee relationship exists." See also Zimmerman v. North American Signal Co., 704

F.2d 347, 352 (7th Cir.1983) (holding that "employee" should be defined by reference to common law principles of employment and that definition should not "include persons who are no more than directors of a corporation or unpaid, inactive officers"). Similarly, the Sixth Circuit has held that officers and directors who also performed traditional employee duties, such as maintaining records, preparing financial statements, and managing the organization's daily business, should be considered employees for the purposes of the ADEA—regardless of their role as policy makers on the board of directors. *EEOC v. First Catholic Slovak Ladies Ass'n*, 694 F.2d 1068, 1070 (6th Cir.1982), *cert. denied*, 464 U.S. 819, 104 S.Ct. 80, 78 L.Ed.2d 90 (1983).

While the court in *Hyland* held that status as a corporate director/shareholder and status as a partner are "mutually exclusive" for purposes of exemption from the ADEA, it did not imply, much less hold, that all directors must be viewed as employees. Directors who do not possess the common law indicia of employment are clearly not "employees." Thus the *Hyland* court looked to the director's role in the company to determine whether there existed an employment relationship in addition to the role of director. *Hyland*, 794 F.2d at 798. The two can often exist side by side, as "[t]here is nothing inherently inconsistent between the coexistence of a proprietary and an employment relationship." *Id.* at 796 (quoting *Goldberg v. Whitaker House Coop., Inc.*, 366 U.S. 28, 32, 81 S.Ct. 933, 936, 6 L.Ed.2d 100 (1961) (alteration in original)).

In assessing whether a director has assumed duties that make him an employee for purposes of the anti-discrimination laws, courts have molded the somewhat nebulous "common law agency" test of employment—which requires a broad examination of the totality of the circumstances—into a more manageable three-factor test: (1) whether the director has undertaken traditional employee duties; (2) whether the director was regularly employed by a separate entity; and (3) whether the director reported to someone higher in the hierarchy. *Lattanzio v. Security Nat'l Bank*, 825 F.Supp. 86, 90 (E.D.Pa. 1993); *see also Chavero*, 787 F.2d at 1157

(finding no employee relationship where members of board of directors did not oversee daily operations and reported to no superior body or individual); *Zimmerman*, 704 F.2d at 351–52 (finding no employee relationship where directors took no active role in daily affairs of corporation and received payment only for directorial duties); *First Catholic Slovak Ladies Ass'n*, 694 F.2d at 1070 (finding employee relationship where members of board maintained records, prepared financial statements, managed the office, were responsible for the work to the governing body of organization, and drew salaries for their daily responsibilities); *EEOC v. Pettegrove Truck Serv., Inc.*, 716 F.Supp. 1430, 1433 (S.D.Fla.1989) (finding employee relationship where director served essentially as manager of operations and worked for company as her full time occupation); *Schoenbaum v. Orange County Ctr. for the Performing Arts, Inc.*, 677 F.Supp. 1036, 1038 (C.D.Cal.1987) (finding no employee relationship where trustees were "active in other business pursuits and devoted only a relatively small portion of [their] time" to the organization).

Because all three of these prongs are satisfied in this case, we conclude that, as a matter of law, J & H's directors are also "employees" for purposes of the ADEA. First, it is clear that J & H's directors performed traditional employee duties. They are chosen from people in senior managerial positions, and while they do take on additional oversight and policy-making responsibilities by virtue of their positions as directors, they also continue their daily duties as senior officers or managers. For example, Gardner Mundy was employed as J & H's general counsel and corporate secretary both before and after his election to the J & H Board of Directors. As such, he was responsible for overseeing the firm's legal affairs, and for keeping corporate records for J & H. Second, J & H's directors all work full time for J & H. Unlike the directors in *Zimmerman*, 704 F.2d at 351, and *Schoenbaum*, 677 F.Supp. at 1038, they are not primarily engaged in other pursuits and they devote the vast majority of their working time to their positions as senior managers or officers of the organization. Third, although the Board

itself is the highest authority within J & H, the individual directors, in their capacity as officers and managers, each report to the senior members of the Board, who are responsible for their annual performance evaluations.[4] While the compensation of J & H's directors consists of a percentage of the annual profits—suggesting that they do not have a traditional employment relationship— their compensation is tied to their performance as evaluated by the senior members of the Board. This authoritative evaluation by their superiors suggests that J & H directors *are* employees under the common law test. Most telling is J & H's own admission that, upon election, a J & H director *"will continue in J & H's active service as an officer and employee of J & H or one of its subsidiaries."* (Emphasis added.)

We attach no particular significance to the fact that a director's employment by J & H is "but an aspect of the fundamentally entrepreneurial relationship that the Directors have among themselves and to the firm as a whole." This merely indicates, as the district court held, that J & H's directors have a dual status as employees and directors. *Johnson & Higgins,* 887 F.Supp. at 685, 688. In an unrelated ADEA suit by a former director against J & H, the Third Circuit similarly acknowledged that whether the ADEA would apply to J & H's directors "is a function of [the directors'] duties and not [their] title[s]." *Sempier v. Johnson & Higgins,* 45 F.3d 724, 728 n. 4 (3d Cir.), *cert. denied,* —— U.S. ——, 115 S.Ct. 2611, 132 L.Ed.2d 854 (1995).

█ We hold the ADEA to be applicable here insofar as the mandatory retirement policy requires J & H's directors to retire as *officers and managers employed by the firm.* An employer cannot require senior-level employees to retire merely because they have reached the age of 60 or 62. Congress has

specifically stated that the minimum mandatory retirement age for senior-level employees is 65. *See* 29 U.S.C. § 631(c). Simply put, any policy that requires such employees to retire, solely on account of age, before they reach 65, violates the ADEA.

As the district court well noted, J & H can comply with the ADEA by severing the link between the individual's employee status and his director status. Once so severed, nonemployee directors are not subject to the ADEA as employees. Additionally, J & H is free to implement a mandatory retirement policy that requires them to sell their stock and cease service on the Board at any age. *See* 29 U.S.C. §§ 623 (no provision in this section, "Prohibition of age discrimination", protecting employers from the type of discrimination at issue in this case), 630(f) (ADEA definition of employee as one "employed by any employer").

### 2. *Reasonable Factors other than Age*

█ J & H argues that even if its mandatory retirement policy must comply with the provisions of the ADEA, it does not violate that statute because it falls under the exception for employment decisions based on "reasonable factors other than age." [5]

The "reasonable factor other than age," or "RFOA," exception states that "[i]t shall not be unlawful for an employer ... to take any action otherwise prohibited ... where the differentiation is based on reasonable factors other than age...." 29 U.S.C. § 623(f)(1). The relevant EEOC regulation interpreting the RFOA provision, 29 C.F.R. § 1625.7(c), states that "[w]hen an employment practice uses age as a limiting criterion, the defense that the practice is justified by a reasonable factor other than age is unavailable." Accordingly, the district court found that the RFOA exception was not applicable to J &

---

**4.** With the maximum number of directors set at 44, this could result in roughly 40 directors reporting to a small group of senior directors for "probing" and "meaningful" evaluations. This is not a system designed to make "directors ... accountable to each other," as suggested in the dissent. Dis. at 1545.

**5.** J & H admits its policy is facially discriminatory on the basis of age, and thus the four part

inquiry for assessing intentional discrimination first set forth in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802–04, 93 S.Ct. 1817, 1824–25, 36 L.Ed.2d 668 (1973), is inapplicable. *See Johnson v. New York,* 49 F.3d 75, 78–79 (2d Cir.1995) ("In cases ... where there is direct evidence that the disparate treatment ... is agedependent, the *McDonnell Douglas* search for a motive is unnecessary and therefore inapplicable.").

H's mandatory retirement policy, which not only "uses age as a limiting criterion," but uses it as its *sole* criterion. *Johnson & Higgins,* 887 F.Supp. at 685–86.

██ J & H argues that the strict terms of the EEOC's interpretation of the RFOA exception, 29 C.F.R. § 1625.7(c), cannot be reconciled with the broad language of the RFOA statutory exception in the ADEA itself, 29 U.S.C. § 623(f)(1). J & H suggest, in effect, that the congressionally crafted RFOA exception should not be read out of the ADEA by the EEOC's interpretation of that exception. J & H asserts that the statutory RFOA exception was intended to provide an exception for circumstances where an employer could demonstrate that a particular policy or decision, though expressed in terms of age, was actually based on "reasonable factors other than age." J & H thus claims that its mandatory retirement policy was driven by the "Directors' efforts to plan their own compensation and succession in an orderly fashion"—rather than any arbitrary judgments about the capabilities or desirability of older workers—and therefore the RFOA defense applies.

We find J & H's argument to be without merit. The plain language of § 623(f)(1) makes it clear that an employer has a defense if his policy is based on reasonable factors "other than age," *not* if the policy is reasonably based on age. By its terms, the statute supplies an exception for "age-neutral" decisions based on other factors such as health or even education that might be correlated with age, *see Iervolino v. Delta Air Lines, Inc.,* 796 F.2d 1408, 1415, 1419 (11th Cir.1986) (describing RFOA defense as a defense that a particular practice is "age neutral"; airline's policy prohibiting flight captains of any age from transferring to flight engineering positions was found to be based on a reasonable factor *other* than age), *cert. denied,* 479 U.S. 1090, 107 S.Ct. 1300, 94 L.Ed.2d 155 (1987)—not an exception for policies that *explicitly but reasonably* discriminate based on age. Our view has been adopted by at least two other courts of appeals. *See EEOC v. Massachusetts,* 987 F.2d 64, 72–73 (1st Cir.1993) (holding that state could not maintain RFOA defense where age

was only consideration for policy requiring medical examination of workers, despite state's assertion that policy motivated by concerns for fitness); *EEOC v. County of Allegheny,* 705 F.2d 679, 682 (3d Cir.1983) (holding that "the plain language of [§ 623(f)(1) ] precludes ... an argument" that reliance on a state statute barring persons over 35 from taking police examination is basis for a defense on a reasonable factor other than age).

Furthermore, J & H's argument is quite similar to one rejected by the Supreme Court in the context of a Title VII suit challenging a city department's policy of requiring larger pension contributions from women because of their greater longevity. In *City of Los Angeles, Dep't of Water & Power v. Manhart,* 435 U.S. 702, 98 S.Ct. 1370, 55 L.Ed.2d 657 (1978), the Department of Water & Power argued that its pension policy was based on longevity, *not* sex. In rejecting this approach, the Court held:

> It is plain ... that any individual's life expectancy is based on a number of factors, of which sex is only one. The record contains no evidence that any factor other than the employee's sex was taken into account in calculating the ... differential between the respective contributions by men and women.... [O]ne cannot say that an actuarial distinction based entirely on sex is based on any other factor other than sex. Sex is exactly what it is based on.

*Id.* at 712–13, 98 S.Ct. at 1377–78 (quotation marks omitted).

The mandatory retirement policy at issue in the present appeal is no different. We have no reason to doubt J & H's assertion that its policy is an attempt to achieve orderly succession and turnover among directors. Nevertheless, we find the question of J & H's assertedly benign intentions—J & H's claim that it did not intend to invidiously discriminate on the basis of age—irrelevant. Age is only one factor to consider in developing such a policy—a director's length of service is equally, if not more, significant. J & H's policy differentiates based on a director's age, and J & H simply cannot assert that it is

based on any other factor. Accordingly, the RFOA defense is unavailable.

### E. *Injunctive Relief*

 Finally, we turn to J & H's objections to the scope and appropriateness of the injunctive relief granted. The ADEA directs courts to "grant such legal or equitable relief as may be appropriate to effectuate the purposes" of the Act. 29 U.S.C. § 626(b). Under the ADEA, courts possess "broad discretion ... in fashioning relief." *Malarkey*, 983 F.2d at 1215. A district court's award of equitable and injunctive relief is subject to reversal only for abuse of discretion or a clear error of law. *Id.* at 1214. J & H argues that the district court abused its discretion in issuing the injunction because, *inter alia*, it violated Federal Rule of Civil Procedure 65(d) by failing (1) to set forth the reasons for the injunction and (2) to describe the act or acts sought to be restrained in sufficient detail.

We are unpersuaded. First, the injunction entered fully complies with Rule 65(d) insofar as the opinion and order accompanying it set forth extensive findings of fact and conclusions of law. The court determined on the basis of an extensive record and full briefing, that J & H's policy requiring mandatory retirement for all employee-directors at age 60 or 62 violated the ADEA. No more specific reasons need be—or in this case, could be—given. *See New York State Nat'l Org. for Women v. Terry*, 961 F.2d 390, 398 (2d Cir.1992), *vacated on other grounds*, 507 U.S. 901, 113 S.Ct. 1233, 122 L.Ed.2d 640 (1993).

Second, the injunction is not impermissibly vague; it clearly prohibits J & H from enforcing its unlawful retirement policy against any of its present directors and from forcing its new directors to leave the company at an age that violates the ADEA. J & H was "permanently enjoined ... from retiring employee-directors ... pursuant to its ... unlawful retirement policy" and directed to "file and serve on [the EEOC] ... a modified retirement policy for its employee-directors that complies with the ... ADEA." The court proposed one possible modification of the policy that would bring the policy into conformity with the ADEA: a severance of

the link between director and employee status—that is, "allowing ... individuals to remain as employees of J & H even after losing their Directorship" at age 60 or 62. *Johnson & Higgins*, 887 F.Supp. at 688.

Inasmuch as broad injunctive relief is justified in fashioning remedies for violations of the ADEA, *Malarkey*, 983 F.2d at 1215; *see also* 11A CHARLES A. WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE & PROCEDURE § 2955 at 327 (1995), we find that the district court did not abuse its discretion in enjoining J & H's current policy. Because it is the policy itself that constitutes the violation—rather than its application to a particular employee—the injunction could not be more narrowly tailored than it was.

We have considered J & H's other arguments concerning the scope and appropriateness of the injunction, and we find them to be without merit.

### III. CONCLUSION

To summarize:

1. We affirm the district court's determination that the EEOC satisfied its statutory duty to "conciliate" before filing a formal complaint. Where a defendant responds to an invitation to conciliate by denying the allegations, the EEOC's duty to conciliate is satisfied, and it may proceed to litigation.

2. We affirm the district court's holding that the EEOC's broad enforcement power under the ADEA permits it to pursue litigation against policies that it believes violate the Act, even where no aggrieved party has filed charges or supports the suit.

3. We conclude that the ADEA is applicable to J & H's mandatory retirement policy insofar as the policy requires J & H's directors to retire as employees of the firm; and we find that the policy, which requires director-employees to step down at age 60 or 62, is *not* based on reasonable factors other than age.

4. We conclude that the district court did not abuse its discretion by enjoining J & H from enforcing its discriminatory mandatory retirement policy.

Accordingly, the order of the district court granting partial summary judgment to plaintiff is affirmed, and the cause is remanded to the district court for a determination of what additional relief, if any, is appropriate.

JACOBS, Circuit Judge, dissenting:

I respectfully dissent.

## A.

The contractual arrangement challenged here by the EEOC is one that bestows on the directors of J & H—the supposed victims of invidious discrimination—privileges and powers held by few persons in the corporate world. Specifically, they acquire a substantial ownership stake in the firm, a share in its considerable profits, a seat on the board of directors, and a long-term payout of profits enjoyed upon retirement. Integral to this arrangement, J & H's directors agree to retire at age 60 or 62, depending on their length of service. In this way, the ownership of the firm lies solely in the hands of the people who run it; succession of ownership and control is orderly and based on entrepreneurial talent; and a back-loaded post-retirement compensation scheme (the Ten–Year Contract) gives a tangible incentive for current directors to focus on long-term growth and stability rather than on quarterly or current-year profitability.

These supposed victims are the architects of this arrangement. As a class, they created it, they acceded to it when they accepted their directorships, and they hold the power to change it if they wish. They actively oppose the EEOC's initiative, and have registered their opposition by affidavits filed in the district court. In short, in this case there is no grievance, no victim, no loss and no claim. I have thought about this, and I do not know why the EEOC should wish to dismantle this wise and provident scheme of corporate governance, or what public interest is served by regulating the age of the stock-holder-directors of J & H, or why the EEOC has been inspired to allocate its resources to this struggle—leaving its 100,000 case backlog to grow and age. *See* EEOC Chairman Gilbert F. Casellas, Statement Before House Committee on Appropriations, 1996 WL 5511770 (Apr. 25, 1996); *EEOC v. G–K–G, Inc.,* 39 F.3d 740, 744 (7th Cir.1994) (EEOC "has long complained of being understaffed and has long been criticized for delay"). As J & H observes, this case is "a nonsensical waste of public and private resources."

Nevertheless, it seems to me that (as the majority holds) the EEOC has the power to press a claim on behalf of unwilling claimants. *See* 29 C.F.R. § 1626.13 (1996). Otherwise, an intimidated employee might derail an enforcement action that serves the interests of that employee and others who are or may become similarly situated. I therefore agree with the majority that the EEOC has the naked power to press a claim sua sponte and against the express wishes of the supposed victims. Indeed, I would concur in the result if I thought that the statute did in fact proscribe J & H's program of corporate ownership and governance.

I dissent on the ground that the directors are employ*ers*—as opposed to employ*ees*—for purposes of their contractual arrangements *inter se,* and therefore are not protected in respect of those arrangements by the Age Discrimination in Employment Act, 29 U.S.C. §§ 621–634 (the "ADEA").[1] In ascertaining whether the J & H directors are employers or employees, the majority focuses on only three factors that are not necessarily dispositive of the issue. In my view, such a limited inquiry necessarily fails to account for the economic realities of this case. A broad examination of all the circumstances reveals, at the very least, that material issues of fact preclude entry of summary judgment against J & H.

## B.

As the majority points out, the ADEA's definitions of the term "employee" and "em-

1. Necessarily, I also conclude that the injunction represents an abuse of discretion, since without a violation of the statute, there is no relief that can make sense. I think this will become even clearer as the injunction is refined, and the delicate contractual balances created by sophisticated financial professionals become distorted by windfalls, asymmetries, and unsettled expectations. Indeed, the result in this appeal does not compel the conclusion that equity justifies any ultimate relief at all.

ployer" are circular. *See* 29 U.S.C. § 630(b), (f). It is nevertheless settled that the ADEA's "protection extends only to those individuals who are in a direct employment relationship with an employer, and that a claim under its provisions lies solely in favor of a person who is an employee at the time of termination." *Hyland v. New Haven Radiology Assocs.*, 794 F.2d 793, 796 (2d Cir. 1986). The EEOC may thus prevail on summary judgment only if there is no question that the directors, in implementing their governance and retirement scheme, acted pursuant to a "direct employment relationship with an employer." If, on the other hand, a material issue is raised as to whether the directors were functioning as employ*ers* in implementing the policy, J & H must prevail on this appeal.

The majority's inquiry on this issue is limited to the following three factors: (1) whether the directors perform duties traditionally performed by employees; (2) whether the directors were employed by separate entities; and (3) whether the directors report to others. Op. at 1539 (citing *Lattanzio v. Security Nat'l Bank*, 825 F.Supp. 86, 90 (E.D.Pa. 1993)). The J & H directors hold positions as senior managers in the firm, are employed by no other entity, and report to one another in the course of their duties. For these reasons, the majority holds as a matter of law that the J & H directors are employees within the meaning of the ADEA. Op. at 1539–40.

I agree that the above three factors may be relevant to ascertaining employment status. But they cannot be dispositive. Employment status is to be determined based on the "economic reality" of the relationship between the individual and the firm as respects the challenged practice or decision. *See Goldberg v. Whitaker House Cooperative*, 366 U.S. 28, 33, 81 S.Ct. 933, 936–37, 6 L.Ed.2d 100 (1961). By definition, any inquiry based

on economic reality cannot be limited to three yes or no questions. *Goldberg* requires us to undertake a searching inquiry into the circumstances of the case, as other circuits and the EEOC have done in ascertaining whether partners in partnerships are covered by the anti-discrimination laws. *See, e.g., Fountain v. Metcalf, Zima & Co.*, 925 F.2d 1398, 1400–01 (11th Cir.1991) (focusing on "actual role played by the claimant in the operations of the involved entity and the extent to which the role dealt with traditional concepts of management, control, and ownership"); *Wheeler v. Hurdman*, 825 F.2d 257, 276 (10th Cir.) (examining "participation in profits and losses, exposure to liability, investment in the firm, partial ownership of the firm assets, and ... voting rights"), *cert. denied*, 484 U.S. 986, 108 S.Ct. 503, 98 L.Ed.2d 501 (1987); *EEOC v. Dowd & Dowd*, 736 F.2d 1177, 1178 (7th Cir.1984) (examining "management, control and ownership" of professional corporation to determine whether shareholders were employees); EEOC Decision No. 85–4, 1985 WL 32777 (E.E.O.C.) at *2 n.4, 37 Fair Empl. Prac. Cas. (BNA) 1885, 1886 n. 4 (March 18, 1985) ("[T]he Commission will consider relevant factors including, but not limited to, the individual's ability to control and operate the business and to determine compensation and the administration of profits ·and losses.").

Moreover, the three factors considered by the majority are not particularly useful in ascertaining whether a director should be considered an employer or employee. The majority concedes that J & H directors "do take on additional oversight and policy-making responsibilities by virtue of their positions as directors," but concludes that they perform duties traditionally performed by employees because they "continue their daily duties as senior officers or managers."[2] Op. at 1539. The majority buttresses its conclusion with J & H's admission that the directors "are also full-time employees of the

---

**2.** The majority relies in part on *EEOC v. First Catholic Slovak Ladies Ass'n,* in which the Sixth Circuit held that the elected directors of a nonprofit charitable institution performed duties typical of employees, and thus were "employees"

under the ADEA. 694 F.2d 1068, 1070 (6th Cir. 1982), *cert. denied,* 464 U.S. 819, 104 S.Ct. 80, 78 L.Ed.2d 90 (1983). But that opinion is silent as to the degree of control that the directors had

firm."[3] This hands-on role for all directors may be unusual in a company as large as J & H. But day-to-day work is not inconsistent with status as a director who is an employer-owner. Some directorships may be sinecures, but there are innumerable corporations in which the sole workers are the owner-directors. A J & H director does not surrender powers and duties as a director, or legal rights as a shareholder in the firm, because she runs a division or pitches a client. There is no support for the idea that persons who do the heavy lifting in a business are employees as opposed to directors and owners.[4]

The other two factors set forth in *Lattanzio* and considered by the majority also seem to be beside the point. The sole shareholder of a corporation who holds the titles of director, chairman and CEO is unlikely to be "regularly employed by a separate entity." Op. at 1539. But we would certainly consider her an "employer" within the meaning of the ADEA. Likewise, even the most senior directors and officers may be subject to "authoritative evaluation" of performance by their fellows. Op. at 1540. Such an arrangement may be indicative of a traditional employment relationship. But it may also be a convenient and effective way of ensuring that senior directors and officers remain accountable to each other for their performance. Partners, for example, often agree to evaluation by a committee of their peers. But that does not make them employees, because partners hold "unique status as *business owners and managers*" that is incompatible with status as employees. *Hyland*, 794 F.2d at 797 (emphasis added). *See also Fountain*, 925 F.2d at 1400–01 (partners held not to be

employees); *Burke v. Friedman*, 556 F.2d 867, 869 (7th Cir.1977) (same); EEOC Decision No. 85–4, 1985 WL 32777 (E.E.O.C.) at *1, 37 Fair Empl. Prac. Cas. (BNA) 1885, 1886 (March 18, 1985) (same).

### C.

I would therefore go beyond the three *Lattanzio* factors in order to ascertain whether there is no material question that the J & H directors are in a direct relationship with an employer. J & H contends that its directors *as directors* share control, legal authority, voting rights and an entrepreneurial stake in J & H, and for that reason should be treated as employers when they adopt and implement policies binding only among themselves. The majority opinion, however, gives no weight to J & H's argument:

> We attach no particular significance to the fact that a director's employment by J & H is "but an aspect of the fundamentally entrepreneurial relationship that the Directors have among themselves and to the firm as a whole."

Op. at 1540.

In my view, the failure to attach outcome-determinative significance to that fact is the main analytical error in the majority opinion. Where directors own and control the firm, and where the board of directors "reports to no one other than itself[,] . . . . the individual board members are not employees" for purposes of the anti-discrimination laws. *Chavero v. Local 241*, 787 F.2d 1154, 1157 (7th Cir.1986) (per curiam). *See also Zimmerman v. North American Signal Co.*, 704 F.2d 347, 351–52 (7th Cir.1983) (directors and un-

---

over the organization, or whether the directors held an entrepreneurial stake in the enterprise.

**3.** The majority makes much of J & H's admission that a J & H officer continues "in J & H's active service as an officer and employee" upon nomination to the board of directors. Op. at 1540. But in determining whether a director occupies the role of employee or employer, the court's inquiry "should not center on the label which the organization has chosen to give to the position." *First Catholic Slovak Ladies*, 694 F.2d at 1070. Because I believe that the directors function purely as employ*ers* in setting their own terms of employment—which is the particularized inquiry

we are required to undertake here—I attach no significance to the label used by J & H.

**4.** Ascertaining employee status by reference to the most workaday tasks that a director performs in a business muddles the analysis. As the Tenth Circuit noted (in a case involving partners), such a rule would create "[a] potentially chaotic situation . . . with partners drifting in to and out of covered 'employee' status, remaining partners all the while, with no one ever quite knowing who is an employee/partner and who is a 'pure' partner." *Wheeler v. Hurdman*, 825 F.2d 257, 274 (10th Cir.), *cert. denied*, 484 U.S. 986, 108 S.Ct. 503, 98 L.Ed.2d 501 (1987).

paid, inactive officers were not employees); EEOC Decision No. 80–23, 1980 WL 8891 (E.E.O.C.) at *1–*2, 26 Fair Empl. Prac. Cas. (BNA) 1807, 1808 (Aug. 27, 1980) (trustees who held exclusive authority to control and manage a trust and its assets were employers, not employees of trust).

The J & H directors hold nearly all of the firm's equity. All directors forgo regular salary, and instead are compensated solely on basis of the firm's performance.[5] Board members have final authority over specific areas of business, and often manage regional offices or entire lines of business. Each director is statutorily entitled by New Jersey law to one vote at meetings of the board. N.J.Stat.Ann. § 14A:6–7.1(1) & (4) (West 1969 & Supp.1996). The board has the power to dissolve the corporation, *id.* §§ 14A:12–1(1)(b), :12–4 & :12–2, amend the bylaws, *id.* § 14A:2–9, amend the certificate of incorporation, *id.* § 14A:9–2, approve mergers or consolidations, *id.* § 14A:10–3, remove and appoint officers, *id.* § 14A:6–16, and determine the duties that officers shall perform, *id.* § 14A:6–15. Because they own and control the company, J & H's directors should be considered employ*ers*—not employ*ees*—for the same reasons that a general partner is considered a "business owner[ ] and manager[ ]," not an employee.[6] *Hyland,* 794 F.2d at 797. *See also Fountain,* 925 F.2d at 1400.

Furthermore, the status of J & H's directors should be ascertained in relation to the challenged employment practice. That is because an individual may be both an employer and employee for purposes of the antidiscrimination laws. For example, a manager may be considered an "employer" in hiring or firing of subordinates, yet qualify as an "employee" if he were terminated for an impermissible reason. In my view, the J &

H directors are acting as "employers" when they decide among themselves the issues of tenure and retirement that bind them all. At the very least, a material issue remains as to whether the J & H directors are employees or employers under the ADEA. *See Sempier v. Johnson & Higgins,* 45 F.3d 724, 728 n. 4. (3d Cir.) ("To the extent that [the plaintiff-director] on remand pursues relief [under the ADEA] related to his status as a director, this issue should be *resolved by trial* on the basis of the parties' proof of his functions at J & H in that capacity." (emphasis added)), *cert. denied,* —— U.S. ——, 115 S.Ct. 2611, 132 L.Ed.2d 854 (1995); *see also Caruso v. Peat, Marwick, Mitchell & Co.,* 717 F.Supp. 218, 222–223 (S.D.N.Y.1989) (denying defendant's motion for summary judgment because material issues remained as to whether plaintiff-partner was an "employee") (Walker, J.); *Caruso v. Peat, Marwick, Mitchell & Co.,* 779 F.Supp. 332, 333 & 334 n. 2 (S.D.N.Y.1991) (question of plaintiff's employee status was decided by jury).

### D.

In sum, it is true that J & H's directors do some things that employees do. But what is relevant here is that they alone hold all the legal and financial power to direct the corporation's acts. The challenged retirement policy is one that only the directors have the power to adopt. It affects only themselves; it impacts equally and without discrimination on each; and it is part of a comprehensive contractual arrangement governing the stock ownership, management succession, and economic destiny of J & H. J & H has established a material question of fact as to whether this policy impacts the directors as employees or as employers. But I think the

---

5. Directors receive (i) draws from the directors' salary pool, which depends on the performance of the firm, and (ii) dividends on any dividend-paying stock they hold, the amount of which, again, depends entirely on the performance of the firm. From time to time, directors may be awarded by their fellow directors with additional shares for outstanding contributions to the enterprise.

6. As the majority notes, J & H is precluded by *Hyland* from arguing that its corporate directors are *de facto* partners in a general partnership as a defense to liability under the ADEA. *Hyland,* 794 F.2d at 797–98. But J & H is not making that argument. Instead, J & H argues that the directors hold ownership interests, legal authority and decision-making power commensurate with traditional employers, and for that reason cannot be considered employers in electing to bind themselves to J & H's retirement policy.

issue is so clear on this record that I would reverse.