**EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, Plaintiff,**

v.

**BLOOMBERG L.P., Defendant.**

Jill Patricot, Tanys Lancaster, Janet Loures, Monica Prestia, Marina Kushnir and Maria Mandalakis, Plaintiffs–Intervenors,

v.

**Bloomberg L.P., Defendant.**

**No. 07 Civ. 8383 (LAP).**

United States District Court, S.D. New York.

Oct. 25, 2010.

Opinion Clarifying Prior Opinion on Reconsideration Dec. 2, 2010.

Elizabeth Anne Grossman, Raechel Lee Adams, Robert David Rose, Christine Jiyeun Back, Kam Sau Wong, Konrad Batog, Michelle Anne Caiola, U.S. Equal Employment Opportunity Commission, New York, NY, Justin Mulaire, U.S. Equal Employment Opportunity Commission, Chicago, IL, for Plaintiff.

Milo Silberstein, William J. Dealy, Dealy & Silberstein LLP, Richard Alan Roth, The Roth Law Firm, PLLC, New York, NY, for Plaintiffs-Intervenors.

Eric S. Dreiband, Hannah M. Breshin, Sherron Thomas McClain, M. Carter Delorme, Stephanie Holmes, Tonya M. Osborne, Jones Day, Washington, DC, Thomas H. Golden, Willkie Farr & Gallagher LLP, Vicki Renee Walcott-Edim, Jones Day, New York, NY, for Defendant.

## OPINION & ORDER

LORETTA A. PRESKA, Chief Judge:

Plaintiff, the Equal Employment Opportunity Commission ("EEOC"), filed this action against Defendant Bloomberg L.P. ("Bloomberg") after several current and former employees had filed charges with the EEOC alleging sex/pregnancy discrimination and retaliation [1] in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e(k), 2000e-2. (Second Amended Compl. ¶¶ 1, 6.) Generally, the complaint alleged that Bloomberg had discriminated and/or retaliated against the claimants and other similarly situated employees after they had announced their pregnancies and had returned to work following maternity leave. (*Id.* ¶¶ 7, 9.)

---

1. Claimants Jill Patricot, Tanys Lancaster, and Janet Loures filed charges with the EEOC alleging sex/pregnancy discrimination by Bloomberg. (Second Amended Compl. ¶ 6.) They are referred to throughout as the "Charging Parties." Later, claimants Jill Patricot, Janet Loures, Maria Mandalakis, and Marina Kushnir filed charges with the EEOC alleging retaliation and sex/pregnancy discrimination by Bloomberg. (*Id.*) This set of claimants is referred to throughout as the "Retaliation Charging Parties."

Before the Court are two motions for summary judgment brought by Bloomberg. One motion seeks summary judgment on all of the EEOC's claims due to the EEOC's alleged failure to conciliate prior to bringing suit. The other seeks summary judgment on claims Bloomberg argues are time-barred. For the reasons set forth below. Defendant's Motion for Summary Judgment for Failure to Conciliate [dkt. no. 103] is DENIED in part and GRANTED in part. Defendant's Motion for Summary Judgment as to Time–Barred Claims [dkt. no. 99] is GRANTED.

## I. SUMMARY JUDGMENT STANDARD

Bloomberg will not prevail on its motions for summary judgment unless "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In determining whether summary judgment is appropriate, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Vivenzio v. City of Syracuse,* 611 F.3d 98, 106 (2d Cir.2010). Summary judgment is improper "if there is any evidence in the record from any source from which a reasonable inference could be drawn in favor of the nonmoving party" on a material issue of fact. *Vivenzio,* 611 F.3d at 106.

## II. FAILURE TO CONCILIATE

Although the EEOC is authorized to bring suit to enforce the requirements of Title VII, 42 U.S.C. § 2000e–5(f), Congress requires it to attempt to "eliminate any such alleged unlawful employment practice by informal methods of conference, conciliation, and persuasion," *id.* § 2000e–5(b), before filing suit. *EEOC v. Johnson & Higgins, Inc.,* 91 F.3d 1529, 1534–35 (2d Cir.1996).

Bloomberg argues that the EEOC's discrimination action should be dismissed because the EEOC failed to meet its statutory obligation to conciliate both the discrimination claims and the retaliation claims before bringing suit. Bloomberg asseverates that the EEOC (1) did not adequately investigate the charges eventually filed in the lawsuit or provide Bloomberg with adequate notice of the charges to allow for sufficient conciliation and (2) failed to make a good faith effort to conciliate the charges. (Bloomberg Br. at 7–9.)[2] The Court divides its analysis along these lines.

### A. *Notice and Investigation*

Bloomberg makes its notice and investigation arguments first as to the sex discrimination claims and then as to the retaliation claims. It then argues, in the alternative, that the EEOC's investigation was geographically limited, so the litigation should be so limited as well. The Court addresses these arguments in that order.

#### 1. Discrimination Claims

Bloomberg argues that the EEOC's investigation did not cover all of the claims it eventually filed. (*Id.* at 6.) It also argues that because the EEOC provided Bloom-

---

**2.** Citations to briefs in Part II of this opinion refer to the parties' briefs on the conciliation issues.

berg with insufficient notice that the sex discrimination charges included class-type claims, Bloomberg did not have an opportunity to conciliate such claims. (*Id.* at 7.) The Court rejects these arguments.

The EEOC began its investigation after three women, the Charging Parties, filed sex/pregnancy discrimination charges with the EEOC against Bloomberg. (EEOC R.56.1 Statement on Conciliation Claims ¶¶ 1–4 ("EEOC Concil. 56.1").) The Charging Parties alleged in their EEOC charges of discrimination that Bloomberg discriminated against other women who had returned from maternity leave or had small children at home.[3] (Declaration of Kam S. Wong ("Wong Decl.") Ex. 1–3.) The charges alleged a "pervasive bias" at Bloomberg against pregnant employees or those with newborns. (*Id.* Exs. 2–3.)

Following these leads, the EEOC expanded its investigation into Bloomberg's related employment practices more generally. For example, the EEOC asked for and received from Bloomberg information with respect to hundreds of women who had taken maternity leave companywide. (*Id.* Ex. 19; EEOC Concil. 56.1 ¶ 182.) It investigated the diminished number of employees who reported to females following their pregnancies. (EEOC Concil. 56.1 ¶ 188.) It interviewed other potential claimants, requested information from Bloomberg about twenty-four other employees who had been on parental leave, received information about fourteen other similar claimants who were demoted, and interviewed those and other potential claimants. (*Id.* ¶¶ 10, 188–190, 192–196.)

On June 27, 2007, the EEOC sent Bloomberg a Letter of Determination ("LOD") regarding the sex/pregnancy dis-

crimination claims, a proposed conciliation agreement, and additional monetary demands from the Charging Parties. (*Id.* ¶ 198.) The LOD laid out the Charging Parties' basic allegation:

> They were all employees [of Bloomberg] and were well regarded for their work performance ... until they became pregnant and then took maternity leave. Thereafter, job functions and responsibilities were taken away from them, the number of their direct reports was reduced, they were demoted ..., they experienced declines in compensation, and they were otherwise discriminated against ....

(Wong Decl. ¶ 26, at EE00013.) The LOD then set forth examples from the Charging Parties' specific allegations. (*Id.* at EE00014.)

The LOD did not stop with the Charging Parties' claims, however. It stated that the "Charging Parties' claims of discrimination on account of sex/pregnancy were echoed by a number of other female current and former employees who have taken maternity leave. EEOC's investigation shows that their careers lost momentum and that they were transferred, displaced, and/or demoted." (*Id.*) Its conclusion was succinct: "The [EEOC] finds cause to believe that [Bloomberg] discriminated against the three Charging Parties and a class of similarly-situated women based on their sex/pregnancy by demoting them, decreasing their compensation, and otherwise discriminating against them in the terms, conditions or privileges of their employment." (*Id.* at EE0G014–15.)

Along with the LOD, the EEOC sent Bloomberg a proposed conciliation agree-

---

**3.** The parties dispute the substance behind certain factual statements in this and the following four paragraphs. Nevertheless, the issue the Court addresses in this section is whether Bloomberg had notice of the charges pursued by the EEOC and whether the parties attempted good-faith conciliation prior to the lawsuit. No party disputes whether these events occurred, however. Therefore, any factual disputes are immaterial.

ment. (*Id.* Ex. 27; EEOC Concil. 56.1 ¶ 16.) The agreement provided for monetary relief to the Charging Parties,[4] the creation of a $7.5 million claim fund for class members, and injunctive relief.[5] (EEOC Concil. 56.1 ¶¶ 17, 20; Wong Decl. Ex. 27.) The proposed agreement defined the class as

> female employees who took maternity leave between January 1, 2003 and the present and who lost their job responsibilities, suffered a decline in job level or status, received less compensation, lost a scheduled increase, or otherwise experienced any reduction in the terms and conditions of their employment following notice to Bloomberg of their pregnancy or following their return from maternity leave.

(*See* EEOC Concil. 56.1 ¶ 20.)

Before moving into Bloomberg's primary arguments, the Court dismisses a potential red herring. Bloomberg correctly points out that it was not given notice of the particulars and scope of the EEOC's discrimination investigation. (Bloomberg's Reply 56.1 Statement on Conciliation Claims ("B'berg Concil. Reply") ¶¶ 187–190, 192–196; Bloomberg Br. at 6–7.) It suggests that the scope of the EEOC's suit here is therefore overbroad. (Bloomberg Br. at 7.)

■ This argument misapprehends the role notice plays in the conciliation process. Notice of the particulars of the investigation is not required, and the scope

of the EEOC's initial investigation does not limit the scope of the lawsuit alleging Title VII violations it may later bring. "Any violations that the EEOC ascertains in the course of a reasonable investigation of the charging party's complaint are actionable." *EEOC v. Caterpillar, Inc.*, 409 F.3d 831, 833 (7th Cir.2005) (quoting *Gen. Tel. Co. v. EEOC*, 446 U.S. 318, 331, 100 S.Ct. 1698, 64 L.Ed.2d 319 (1980)). Following such an investigation, the EEOC must give notice of the *charges* it seeks to conciliate. *EEOC v. Thomas Dodge Corp. of N.Y.*, 524 F.Supp.2d 227, 236 (E.D.N.Y. 2007). The Court thus rejects Bloomberg's contention that it was required to receive notice of the *investigation* to be able to conciliate the claims here.

■ That preliminary matter aside, Bloomberg argues that the scope of the lawsuit filed improperly exceeded the scope of the investigation actually conducted. (Bloomberg Br. at 7.) This argument founders. Although "[a] district court only has jurisdiction to hear claims which are either raised in the EEOC charge or are reasonably related to the EEOC charge," *EEOC v. Golden Lender Fin. Group*, No. 99 Civ. 8591, 2000 WL 381426, at *4 (S.D.N.Y. Apr. 13, 2000) (Koeltl, J.), the lawsuit filed here is reasonably related to the original charges. The Charging Parties' statements that others had been treated in the same way led the EEOC to investigate other similarly situated female employees. Such an extension of the in-

---

4. The agreement provided for $546,263 in back pay plus interest, $6,101,556 in front pay, and $250,000 in compensatory damages for Ms. Patricot; $1,199,416 in back pay plus interest, $6,412,277 in front pay, and $200,000 in compensatory damages for Ms. Lancaster; and $730,078 in back pay, $7,685,292 in front pay, and $300,000 in compensatory damages for Ms. Loures. (Wong Decl. Ex. 27.)

5. The Court recognizes that EEOC enforcement actions, including those brought on behalf of a class of similarly aggrieved individuals, are not "class actions" subject to Rule 23 of the Federal Rules of Civil Procedure. *See Gen. Tel. Co. v. EEOC*, 446 U.S. 318, 323–24, 100 S.Ct. 1698, 64 L.Ed.2d 319 (1980). The Court refers to a "class" for clarity, however, because the EEOC's enforcement action spans several individuals with similar claims and alleges a pattern or practice of discrimination.

vestigation grew out of the course of a reasonable investigation of the initial charges, and the investigation developed in a step-by-step fashion into a classwide inquiry. *See EEOC v. Jillian's of Indianapolis, IN, Inc.*, 279 F.Supp.2d 974, 979 (S.D.Ind.2003); *Golden Lender*, 2000 WL 381426, at *3–4. Accordingly, filing a classwide lawsuit was within the scope of the investigation. *See Golden Lender*, 2000 WL 381426, at *4.

■ Bloomberg also argues that the lawsuit filed ultimately must "match" the claims the parties attempted to conciliate. (Bloomberg Br. at 5, 7.) Insofar as conciliation is a prerequisite to suit, this proposition has merit: the EEOC cannot "attempt conciliation on one set of issues and having failed, litigate a different set." *EEOC v. Sears, Roebuck & Co.*, 650 F.2d 14, 19 (2d Cir.1981). As part of attempting conciliation, then, the EEOC has to provide sufficient notice to the employer of the nature of the charges against it so as to set the stage for fruitful conciliation discussions. *See, e.g., id.*; *EEOC v. Chesapeake & Ohio Ry. Co.*, 577 F.2d 229, 232 (4th Cir.1978) (stating that EEOC should "notify an employer of the [its] findings and . . . provide common ground for conciliation"); *see also EEOC v. Outback Steak House of Fla., Inc.*, 520 F.Supp.2d 1250, 1262 (D.Colo. 2007).

■ The Court concludes that Bloomberg had sufficient notice that it was facing class-type claims to engage in conciliation discussions. First, the LOD stated that Bloomberg was facing sex discrimination charges from a "class of similarly situated women." (Wong Decl. Ex. 26.) The LOD explained that the Charging Parties' claims were "echoed by a number of other female" employees. (*Id.*) These statements put Bloomberg on notice that class-type claims were to be the subject of conciliation discussions. *Cf. Thomas Dodge Corp.*, 524 F.Supp.2d at 238 (reject-

ing no-notice argument when employer given LOD with parallel "class of female employees" language). Second, the fact that the proposed conciliation agreement, which was sent with the LOD, contained a discernable definition of the class of potential claimants and a demand for a $7.5 million pool of funds for that class of claimants suggested in no uncertain terms that many more claimants than the three Charging Parties existed. (B'berg Concil. Reply ¶¶ 16, 20.) Taken together with the LOD, Bloomberg had notice that a potentially large class of claimants would be on the table in conciliation negotiations. *See Thomas Dodge Corp.*, 524 F.Supp.2d at 238 (finding notice of class-type allegations when EEOC made classwide damage demands in proposed agreement); *see also EEOC v. Paramount Staffing, Inc.*, 601 F.Supp.2d 986, 990 (W.D.Tenn.2009) (stating that an "outline of the class" is sufficient).

Moreover, although Bloomberg did not necessarily have particularized information about the scope of the investigation, the three Charging Parties' charges were served on Bloomberg. (B'berg Concil. Reply ¶ 6.) Each of those charges included allegations to the effect that other women have been treated similarly or that there is a "pervasive bias" against employees with newborns. (*See* Wong Decl. Ex. 1–3.) Bloomberg knew that the EEOC requested information regarding many other employees who had taken maternity leave, and it provided such information to the EEOC. (EEOC Concil. 56.1 ¶¶ 10, 182, 190.) Bloomberg surely could have put two and two together when invited by the EEOC to conciliate class-type claims. *Compare, e.g., Thomas Dodge Corp.*, 524 F.Supp.2d at 238 (stating that "initial charges," LOD language, and class demands sufficed to notify employer of class-type claims), *with, e.g., EEOC v. Am. Express Publ'g Corp.*, 681 F.Supp. 216, 221–

22 (S.D.N.Y.1988) (stating that "nothing" in EEOC's determination letter could "reasonably be construed to suggest a broader scope" than a personal action). Thus, the EEOC did what it is required to do. *See, e.g., EEOC v. Lockheed Martin Global Telecomms., Inc.,* 514 F.Supp.2d 797, 806–07 (D.Md.2007) ("The EEOC must only put a 'defendant on notice that a class action may be brought.'") (quoting *EEOC v. Hugin Sweda, Inc.,* 750 F.Supp. 165, 167 (D.N.J.1990)); *EEOC v. Dial Corp.,* 156 F.Supp.2d 926, 942 (N.D.Ill.2001) (similar).

Drawing all inferences in favor of the EEOC, the Court finds that Bloomberg had sufficient notice that the EEOC sought to conciliate class-type sex/pregnancy discrimination claims.

### 2. Retaliation Claims

With respect to the retaliation claims, Bloomberg advances two arguments that differ from the arguments made with respect to the discrimination claims.[6] Bloomberg argues first that the EEOC's retaliation claims must be dismissed because those claims were included in the original complaint and the first amended complaint, prior to any charge, investigation, or attempt to conciliate. (Bloomberg Br. at 9–10.) The EEOC does not dispute these facts. (EEOC Concil. 56.1 ¶¶ 39, 46.) Rather, it states that the inclusion of retaliation claims in those complaints was through a single, inadvertent reference to section 704 of Title VII and that the complaint made no substantive factual allega-

tions of retaliation. (*Id.* ¶¶ 260–264.) The EEOC's position is that the second amended complaint posited retaliation claims for the first time, after its conciliation efforts on those claims failed. (*Id.* ¶¶ 164, 264; EEOC Br. at 5.)

Bloomberg's argument vaults formalism over substance. Although it is true that the first two complaints referenced section 704 of Title VII, that reference came in a string of Title VII section number citations, and neither complaint contained any factual allegations of retaliation whatsoever, (Compl. ¶ 7; First Amend. Compl. ¶ 7.) Only the Second Amended Complaint contains substantive allegations of retaliation. (Second Amend. Compl. ¶ 9.) The Court recognizes that any claim alleged by the EEOC must have been subject to the conciliation process, *Johnson & Higgins,* 91 F.3d at 1534–35, but the Second Amended Complaint is the operative complaint alleging retaliation claims. *See, e.g., Washer v. Bullitt County,* 110 U.S. 558, 561–62, 4 S.Ct. 249, 28 L.Ed. 249 (1884) (amended complaint renders original complaint nugatory); *Int'l Controls Corp. v. Vesco,* 556 F.2d 665, 668–69 (2d Cir.1977) (same). That complaint was filed on March 31, 2009, after the EEOC gave Bloomberg notice of a classwide retaliation investigation (Bloomberg Br. at 10) and after the EEOC determined, on February 23, 2009, that conciliation efforts with respect to the retaliation claims failed. (EEOC Concil. 56.1 ¶ 163–164.) There-

---

**6.** Bloomberg also repeats the lack-of-notice arguments it made with respect to the discrimination claims in the retaliation context, but the Court rejects that effort on substantially the same grounds. *See supra* Part II. A.1. Bloomberg received essentially the same, if not more, notice from the EEOC about the scope of retaliation charges over which the EEOC sought conciliation. (*See* Wong Decl. Exs. 37–40, 42.) In short, the EEOC expressly notified Bloomberg that it was investigating classwide claims of retalia-

tion and its LODs contained a determination that "Bloomberg has taken adverse employment actions against ... a class of female employees." (*Id.* Ex, 37.) The proposed conciliation agreement contained a class recovery fund and class definition. (*Id.* Ex. 42.) And conciliation efforts here involved a substantial exchange of letters about these claims over the course of over five months (from August 28, 2008 to February 18, 2009), which evidences that Bloomberg at least had notice. (*Id.* Exs. 43–51, 54–58.)

fore, the retaliation claims were subject to conciliation and properly included in the Second Amended Complaint.

Bloomberg also argues that the depth of the EEOC's investigation of retaliation charges was insufficient to support the eventual lawsuit filed. (Bloomberg Br. at 10.) The Court rejects this argument. *Caterpillar, Inc.*, 409 F.3d at 833 ("The existence of probable cause [for the EEOC] to sue is generally ... not judicially reviewable.") (Posner, J.); *EEOC v. N.Y. News, Inc.*, 1985 WL 2158, at *1 (S.D.N.Y. July 26, 1985).

### 3. Geographic Scope of Investigation

Bloomberg argues that the Court should at least limit the scope of the claims to those arising from the New York and New Jersey offices because the EEOC's conciliation efforts focused on those offices only. (Bloomberg Br. at 14.) The issue here is whether the EEOC's charges indicated a pervasive, companywide practice of discrimination and/or retaliation, or whether the charges indicated a practice specific to the offices from which the charges originated. *See Sears*, 650 F.2d at 19 (stating that the "framework" for conciliation must allow a "fair opportunity" for the parties to conciliate the disputed claims); *see also EEOC v. Am. Nat'l Bank*, 652 F.2d 1176, 1185 (4th Cir.1981) (similar); *Outback Steak House*, 520 F.Supp.2d at 1267.

At minimum, the evidence is equivocal. On the one hand, the EEOC physically conducted interviews only in the New York and New Jersey offices, where the Charging Parties worked (and where the charges originated). (B'berg Concil. Reply ¶¶ 1–3, 9.) On the other hand, the Charging Parties' charges alleged "pervasive" company practices that Bloomberg reasonably could have understood to cross office geographies, the EEOC interviewed high—level management employees whose duties and decisions may have affected other offices, the EEOC requested information about potential class members without geographic limitation, and, most importantly, the EEOC's LOD and proposed conciliation agreement contained classwide claim language without geographic limitation. (B'berg Concil. Reply ¶¶ 10, 165–175, 182, 187, 200–203; Wong Decl. Ex. 27 (proposed conciliation agreement stating that "Class members are defined as female employees who took maternity leave between January 1, 2003 and the present ...").)

Obviously, these facts, among others, are susceptible to two competing inferences: that the proposed conciliation framework spanned all of Bloomberg's offices or that it did not. In deciding this motion, the Court must draw inferences in favor of the nonmoving party. Accordingly, the Court finds that Bloomberg was on notice that the class-type claims it was facing transcended office borders. This notice was therefore sufficient to frame conciliation discussions covering the claims eventually filed in this suit. *See Sears*, 650 F.2d at 19.

### B. *Conciliation Process*

The Court moves to Bloomberg's other primary argument with respect to conciliation. Bloomberg challenges the EEOC's efforts at conciliation, arguing that the process itself afforded it no opportunity to comply voluntarily with the law and that the EEOC did not respond in a reasonable manner to Bloomberg's requests during conciliation. (Bloomberg Br. at 3–5, 8–9, 11–12.) Two conciliation processes progressed separately: one for the discrimination claims and the other for the retaliation claims. The Court sets forth the law governing the conciliation requirement and then lays out the facts surrounding each conciliation process separately. Likewise, it analyzes those efforts separately against this common legal background.

The EEOC may sue only after exhausting conciliation efforts. 42 U.S.C. § 2000e–5(b); *Johnson & Higgins,* 91 F.3d at 1534. The EEOC fulfills this mandate if it "1) outlines to the employer the reasonable cause for its belief that the employer is in violation ..., 2) offers an opportunity for voluntary compliance, and 3) responds in a reasonable and flexible manner to the reasonable attitude of the employer." *Johnson & Higgins,* 91 F.3d at 1534; *EEOC v. New Cherokee Corp.,* 829 F.Supp. 73, 80 (S.D.N.Y.1993). Ultimately, the EEOC must make a good faith effort to conciliate before bringing suit. *Sears,* 650 F.2d at 18–19; *see EEOC v. Klingler Elec. Corp.,* 636 F.2d 104, 107 (5th Cir.1981) ("[T]he fundamental question is the reasonableness and responsiveness of the EEOC's conduct under all the circumstances."); *New Cherokee,* 829 F.Supp. at 81.

The contours of the conciliation process will vary from case to case, but it is designed to "allow [ ] the employer and the EEOC to negotiate how the employer might alter its practices to comply with the law, as well as how much, if any, the employer will pay in damages." *Johnson & Higgins,* 91 F.3d at 1535; *accord Marshall v. Sun Oil Co.,* 605 F.2d 1331, 1334 (5th Cir.1979). The Court's role in reviewing efforts to conciliate, while not inert, is modest; the EEOC, as the enforcement agency, has discretion to formulate conciliation efforts in each situation, but it must do so in good faith. *See Sears,* 650 F.2d at 18–19 ("Although in general the [EEOC] should be given wide latitude in shaping [conciliation efforts], the [EEOC]'s discretion is not unlimited ...." (citation omitted)); *see also Johnson & Higgins,* 91 F.3d at 1534; *EEOC v. Keco Indus., Inc.,* 748 F.2d 1097, 1102 (6th Cir.1984).

### 1. Discrimination Charges

With respect to the discrimination charges, the EEOC initiated conciliation on June 27, 2007, by sending Bloomberg an LOD and a proposed conciliation agreement. (EEOC Concil. 56.1 ¶¶ 198, 206; Wong Decl. Ex. 26 ("[T]he Commission now invites [Bloomberg] to join with it in an effort toward a just resolution of this matter.").) The EEOC requested a counterproposal by July 11, 2007. (EEOC Concil. 56.1 ¶ 211.) By that time, the parties evidently had discussed some logistical matters about the conciliation process and had met to discuss the EEOC's proposed agreement. (*Id.* ¶ 27.) In a letter dated July 12, 2007, the EEOC extended the date by which it expected a counterproposal and explained that the proposal need not be a "fully developed draft." (Wong Decl. Ex. 28.) The EEOC did, however, reiterate the three areas of relief on which it was focusing conciliation discussions: damages for the Charging Parties, injunctive relief, and the creation of a class fund. (*Id.*)

On August 2, 2007, the parties held a conciliation meeting. (B'berg Concil. Reply ¶ 215.) There, Bloomberg's counsel did not make a counterproposal (and one had not yet been made), but the EEOC agreed to allow Bloomberg's counsel to hear the Charging Parties' stories. (*Id.*) On August 10, the EEOC wrote to Bloomberg's counsel again, stating that the EEOC had been unable to reach counsel and that, due to Bloomberg's non-responsiveness, the EEOC "begin[s] to question whether there is a chance of success with conciliation." (*Id.* ¶ 216.) Eleven days later, the parties met again to allow Bloomberg's counsel to hear the Charging Parties' stories in an effort to facilitate conciliation.[7] (*Id.* ¶ 217.) On

---

7. The EEOC enforcement supervisor characterized this meeting as "unusual" in conciliation discussions because the stories involved the merits of the claims (which EEOC already had determined in its LOD), rather than a discussion of "a resolution." (Wong Decl. Ex. 67, at 163.)

August 23, 2007, the EEOC called Bloomberg's counsel to request again a counterproposal; Bloomberg's counsel stated that his client would be offering "five figures" to the Charging Parties. (*Id.* ¶ 219.)

Later that day, Bloomberg sent the EEOC a written counterproposal, which acknowledged the EEOC's three focal points of conciliation and stated that Bloomberg was "willing to engage in the conciliation process with a view towards" an amicable resolution. (*Id.* ¶ 28, 220–221.) But the letter stated that "Bloomberg remains convinced that the Charges lack factual or legal merit . . . ." (*Id.* ¶ 221.)

In contrast to the EEOC's demand for over $6 million on behalf of each Charging Party, Bloomberg's letter offered each $65,000 to settle her claims. (*Id.* ¶¶ 17, 220.) It offered to discuss "policies and practices with the [EEOC] to identify gender-neutral enhancements that would address the particular needs of working parents . . . ." (*Id.* ¶ 221.) Finally, Bloomberg stated that it "cannot, however, agree to the establishment of a 'Claim Fund' " and that absent further information about other potential claimants, "any discussion of monetary settlements should be limited" to the Charging Parties. (*Id.* ¶ 222.)

On August 24, 2007, the EEOC sent Bloomberg a letter declaring that conciliation has been unsuccessful and that further conciliation efforts would be futile. (*Id.* ¶ 224.) In later deposition testimony, the EEOC's enforcement supervisor (who had communicated with Bloomberg throughout conciliation discussions) characterized the difference between the parties' proposals as being "not even in the same galaxy." (*Id.* ¶¶ 211–213, 216, 219–220; Wong Decl. Ex. 67, at 171.)

The Court concludes that the EEOC, in its LOD and attached proposed conciliation agreement, outlined its reasonable cause for its belief that Bloomberg was in violation of Title VII. Those documents also expressly invited Bloomberg to conciliate and provided a comprehensive starting point for discussions by way of a proposed conciliation agreement. Bloomberg thus had an opportunity to comply voluntarily. *See Dial Corp.,* 156 F.Supp.2d at 940–42; *New Cherokee,* 829 F.Supp. at 81.

The best Bloomberg musters is an argument that the EEOC did not respond in a reasonable and flexible manner to Bloomberg's conciliation overtures. (Bloomberg Br. at 8.) Bloomberg argues that since it expressed willingness to discuss nonmonetary proposals and made monetary offers to the charging parties, declaring conciliation a failure one day after Bloomberg's formal response was "grossly arbitrary." (*Id.*)

The Court disagrees. The EEOC's efforts were sufficient to satisfy the conciliation requirement in this context. The parties discussed different aspects of conciliation for nearly two months, during which time the parties met twice and exchanged letters and telephone calls. The EEOC repeatedly requested a counterproposal from Bloomberg and sought to invite discussion of the EEOC's initial proposal, all to no avail until several weeks following the EEOC's proposal. Throughout, the EEOC insisted on three fundamental areas of conciliation: individual monetary relief, injunctive relief, and classwide monetary relief.

When Bloomberg finally responded with a formal counterproposal, its response was effectively a demurrer. Bloomberg denied that its policies and practices violated the law. Although Bloomberg acknowledged the three central areas in which the EEOC sought relief, Bloomberg offered less than one percent of the amounts the EEOC requested for the Charging Parties; it offered no suggestions for nonmonetary relief (but did invite discussions on the top-

ic); and it declined to entertain class-type relief at all, stating instead that if other individual claimants had grievances, they could come forward with their concerns on an individual basis.

"If the defendant refuses the invitation to conciliate or responds by denying the EEOC's allegations, the EEOC need not pursue conciliation and may proceed [to litigation]." *Johnson & Higgins,* 91 F.3d at 1535; *New Cherokee,* 829 F.Supp. at 81 ("If the defendant expresses an unwillingness to discuss the charges as formulated by the EEOC, then conciliation efforts need go no further."); *see also EEOC v. Bruno's Rest.,* 13 F.3d 285, 289 (9th Cir. 1993); *EEOC v. Prudential Fed. Sav. & Loan Ass'n,* 763 F.2d 1166, 1169 (10th Cir.1985). Bloomberg's response refused even to discuss a main prong of the EEOC's proposal: classwide monetary relief.[8] That portion of the discussions was central to the EEOC's determination and proposed resolution of the claims. Bloomberg did not even seek more information about classwide claims; instead, it sought to negotiate on a claim-by-claim basis. Its response was, effectively, a refusal of the EEOC's invitation to conciliate.

Moreover, the parties' positions on individual monetary relief differed so substantially as to make reasonable the EEOC's perception that further negotiations would be futile.[9] *Cf. Dial Corp.,* 156 F.Supp.2d at 940–42 (concluding that the EEOC satisfied conciliation obligation after ending conciliation when parties' monetary proposals grossly differed). Although Bloomberg attempts to minimize the gulf between the parties' positions by arguing that it had insufficient information about the rationale for the EEOC's monetary demands, the EEOC is not required to "disclose all of the underlying evidence ... to the employer." *E.g., EEOC v. Hibbing Taconite Co.,* 266 F.R.D. 260, 274 (D.Minn. 2009). As discussed *supra,* the EEOC provided Bloomberg with enough information to evaluate the claims and respond or at least appreciate the classwide claims and request more information. This is not a case where Bloomberg had to negotiate "in an evidentiary vacuum." *EEOC v. First Midwest Bank, N.A.,* 14 F.Supp.2d 1028, 1032 (N.D.Ill.1998).

Finally, Bloomberg's response to the EEOC's specific nonmonetary proposals was nothing more than an invitation for further discussion about potential "enhancements" to existing policies. (Wong Decl. Ex. 31.) Giving the non-moving party the benefit of the inferences, the EEOC reasonably could have viewed Bloomberg's responses as a refusal to conciliate given the specifics of the circumstances here.

■ The Court makes no judgment about the wisdom of the parties' respective conciliation strategies. *Cf. EEOC v. Cal. Psych. Transitions, Inc.,* 644 F.Supp.2d 1249, 1273 (E.D.Cal.2009) (stating that court's "dissatisfaction" with parties' con-

---

8. Bloomberg's response to the EEOC's classwide relief is somewhat ambiguous. It stated, "As presently advised Bloomberg cannot ... agree to the establishment of a 'Claim Fund' or to the institution of a *de facto* class action against it." (Wong Decl. Ex. 31.) It went on to suggest discussions of other "individual" claims if more claimants existed. (*See id.*) To the extent that Bloomberg's response could be viewed as a request for more information about class claims before discussion proceeds, the Court must draw all inferences

favorable to the nonmoving party. It therefore views Bloomberg's stance as negating further discussion on class-type claims in favor of one-by-one discussions of individual claims.

9. The Court notes that the EEOC must conciliate in good faith. Therefore, it may not make unreasonably large monetary demands then declare conciliation unsuccessful and proceed to litigation when such demands are rejected. This is not the case here, however.

ciliation efforts is not the standard of review). Merely divergent monetary proposals alone may not be enough to declare conciliation futile; further discussions may bridge the gap when the seeds for out-of-court resolution have been sown. But when the parties' proposals and discussions are so divergent as to seem irreconcilable, the courts will not require the EEOC to conduct Sisyphean negotiations to meet its statutory mandate to conciliate. In the specific circumstances here, the EEOC made respectable conciliation efforts, but its proposals were, in effect, rebuffed. Given the parties' communications during conciliation, the EEOC likely had little hope of making significant progress. *See Bruno's Rest.*, 13 F.3d at 289. The EEOC's declaration that conciliation failed one day following Bloomberg's counterproposal is consistent with this view. Making inferences in a light favorable to the EEOC, the Court cannot say that the EEOC failed to make a good faith effort to conciliate the discrimination claims.

### 2. Retaliation Claims

■ Conciliation efforts began similarly with respect to the retaliation charges. The EEOC invited Bloomberg to join in "an effort toward a just resolution" with respect to these charges by sending LODs dated June 16, July 2, July 23, and August 15, 2008. (B'berg Concil. Reply ¶¶ 232, 234.) The EEOC formally initiated conciliation by sending Bloomberg a proposed conciliation agreement on August 20, 2008. (*Id.* ¶ 235.) That agreement proposed monetary relief for the individuals who filed retaliation charges, monetary relief for the proposed class, and injunctive relief. (*Id.*)

On August 28, 2008, Bloomberg responded by letter, stating that it "look[s] forward to working with you to achieve a resolution" and asking for additional time to allow for an internal investigation of the merits of the claims. (*Id.* ¶ 236; Wong

Decl. Ex. 42.) Bloomberg's letter also asked the EEOC for "additional information about its determinations" and gave examples of allegations that it did not fully understand. (B'berg Concil. Reply ¶ 236.)

Bloomberg then responded with a written counterproposal on September 26, 2008. (*Id.* ¶ 237.) Its letter stated that "[m]any of the proposals contained" in the EEOC's proposed agreement are "acceptable to Bloomberg" but sought "further discussion" on others. (Wong Decl. Ex. 44.) Bloomberg's counterproposal stated that Bloomberg was "not in a position" to offer monetary relief to the individual claimants but, rather, that it "awaits" additional information about the EEOC's determinations, as requested in Bloomberg's earlier letter. (*Id.*) It also stated that Bloomberg was "not in a position" to create a class fund but sought "further discussion." (*Id.*) The letter outlined Bloomberg's responses to the EEOC's substantive proposals, many of which Bloomberg accepted or accepted with minor changes. (*Id.*) For example, Bloomberg offered an altered definition of the proposed class and agreed to allow the EEOC sole discretion in determining class membership eligibility. (*Id.*)

While the EEOC did not respond point-by-point to Bloomberg's counterproposal, it sent a letter to Bloomberg on September 29, 2008, stating that if Bloomberg responded to the monetary proposals made by the EEOC, the EEOC would engage in discussions about Bloomberg's counterproposals. (*Id.* Ex. 45.) The EEOC's letter also stated that Bloomberg's requests for further information were unnecessary and that, in any event, the information Bloomberg requested is protected by the deliberative process privilege. (*Id.*)

Following this letter, the parties, for nearly five months, engaged in a vocifer-

ous letter-writing campaign. (*See id.* Exs. 47–51, 54–59.) But the battle lines were drawn, and the parties' letters merely traded jib for jab: the EEOC repeatedly refused to counter Bloomberg's response until Bloomberg was willing to make monetary offers "reasonable" to the EEOC, and Bloomberg repeatedly refused to make any monetary offer unless it received more information about the underlying claims, which the EEOC refused to provide. (*See id.*; B'berg Concil. Reply ¶¶ 96–117.) Bloomberg at one point offered to bring the dispute to mediation, but the EEOC rejected that concept. (Wong Decl. Exs. 46–47.)

The parties met on January 29, 2009, to discuss conciliation, but this meeting bore no fruit. (B'berg Concil. Reply ¶¶ 104–111.) Following the meeting, the parties continued to exchange letters reiterating their fundamental positions and summarizing their respective views of the process to that point. (Wong Decl. Exs. 55–58.) The parties made no more progress. Ultimately, the EEOC sent Bloomberg a letter dated February 29, 2009, declaring that conciliation efforts have been unsuccessful. (*Id.* Ex. 59.)

This process was lengthier (and more vituperative) than that involved in the discrimination claims, but the EEOC failed to meet the requirement that it respond in a reasonable and flexible manner to the employer in conciliation. The EEOC consistently stonewalled in the face of "plainly reasonable" requests from Bloomberg to obtain more information about the claims to formulate a counterproposal. *See Golden Lender,* 2000 WL 381426, at *5; *see*

also *EEOC v. Die Fliedermaus,* 77 F.Supp.2d 460, 467 (S.D.N.Y.1999).

In its conciliation agreement, the EEOC proposed the creation of a $19.3 million class claim fund for retaliation claimants and the payment of $3,796,265 to the Retaliation Charging Parties.[10] Its cover letter also demanded an additional $18.7 million in compensatory and punitive damages on behalf of the Retaliation Charging Parties. Faced with a grand total of over $41 million in monetary demands, Bloomberg requested more information about the charges and the basis for the EEOC's determination before proceeding to make monetary offers. Bloomberg's attitude was reasonable: it was faced with large monetary demands and wanted additional information to evaluate the claims and respond accordingly. Bloomberg, throughout the letter exchange, stated that it was amenable to further discussions, including discussions on classwide claims. Importantly, its posture here stands in marked contrast to its approach to the EEOC's conciliation efforts for the discrimination claims, where Bloomberg essentially refused to discuss class-type relief at all.

Yet the EEOC refused to offer any additional information about its determinations. (Wong Decl. Ex. 45.) The most it offered was vague statements that it had interviewed a "fair number" of women and then extrapolated from those interviews an amount it determined was acceptable for the class claim pool. (B'berg Concil. Reply ¶ 109.) In the specific circumstances of this case, where the charges were varied and numerous, the basic information provided to outline the charges was insufficient for Bloomberg to be able to formu-

---

**10.** The proposed agreement included $275,000 in emotional distress damages and $25,000 in legal fees for Jill Patricot and for Janet Loures; $ 151,090.97 in back pay, $ 1,567,751.30 in front pay, $275,000 in emotional distress damages, and $75,000 in legal fees for Maria Mandalakis; and $156,541 in back pay, $610,882 in front pay, $275,000 in emotional distress damages, and $75,000 in legal fees for Marina Kushnir. (Wong Decl. Ex. 42.)

late a reasonable monetary counteroffer. *See Golden Lender*, 2000 WL 381426, at *5; *First Midwest Bank*, 14 F.Supp.2d at 1033.

The EEOC's approach to conciliation here reeks of using the proposed agreement as a "weapon to force settlement." *EEOC v. Agro Distrib., LLC*, 555 F.3d 462, 468 (5th Cir.2009). The fact that the EEOC was simply unwilling to further discussions because Bloomberg did not provide a specific monetary offer created a "chicken or egg" problem. The EEOC argues that until it received a monetary offer, Bloomberg's negotiation position was unreasonable. But Bloomberg argues that it is unreasonable to require it to make a nearly blind settlement offer when the underlying claims are large and complex. The Court concludes that the EEOC's position, in these circumstances, does not embody a "reasonable and flexible" response to the "reasonable attitudes" of the employer. *See, e.g., Johnson & Higgins*, 91 F.3d at 1534.

The EEOC focused on Bloomberg's failure to provide any "monetary offer to settle" the claims to the exclusion of other considerations. (*E.g.*, Wong Decl. Ex. 47.) In this context, this inflexibility represented a "take-it-or-leave-it demand." *Agro Distrib.*, 555 F.3d at 468. The EEOC did not respond to Bloomberg's initial letter asking for more information, and its ultimate response to such requests was to refuse to provide any further information. In a complex case like this one, the EEOC cannot, when the employer reasonably asks for information to formulate a monetary counteroffer, make substantial monetary demands and require employers simply to pony up or face a lawsuit. *See id.* The EEOC's approach suggests, in the back-and-forth that transpired here, that the EEOC was not making a sincere effort to conciliate the claims. *See Prudential Fed. S & L*, 763 F.2d at 1169; *Marshall*,

605 F.2d at 1335 ("Because conciliation involves at least two parties, we must evaluate one party's efforts with an eye to the conduct of the other party.").

The Court recognizes that the EEOC has discretion in framing the contours of conciliation negotiations, but the EEOC is still required to make a "genuine effort" to conciliate, *Sears*, 650 F.2d at 18, and to respond "reasonably and flexibly" to a reasonable employer in negotiations. *Johnson & Higgins*, 91 F.3d at 1534. Although the EEOC need not prove its charges "to the employer's satisfaction," *Prudential Fed. S & L*, 763 F.2d at 1169, or disclose all of its underlying evidence, *Hibbing Taconite Co.*, 266 F.R.D. at 274, it should have done something in response to Bloomberg's reasonable entreaties. The EEOC's efforts to continue conciliation fall short of the mark. *See Golden Lender*, 2000 WL 381426, at *5; *see also Klingler Elec. Corp.*, 636 F.2d at 107 ("[T]he fundamental question is the reasonableness and responsiveness of the EEOC's conduct under all the circumstances.").

The Court considers the context here noteworthy. The EEOC's retaliation LODs were sent to Bloomberg after some of the same parties already had brought discrimination charges against Bloomberg and after the EEOC had attempted, unsuccessfully, to conciliate those charges and had filed a lawsuit. The parties had, by that time, engaged in substantial discovery efforts and were entrenched in litigation. That litigation does not stay the regular business of the EEOC of course, but the EEOC's response here bespeaks a litigious approach to conciliation, where the EEOC may have "abandoned its role as a neutral investigator," *see Agro Distrib.*, 555 F.3d at 468, and may have sought to coerce a settlement, knowing it could simply add the retaliation claims to pending litigation, *EEOC v. Pet, Inc.*, 612 F.2d

1001, 1002 (5th Cir.1980) (per curiam) (stating that EEOC's conduct "smacks more of coercion than of conciliation").

■ That context, along with the parties' acrimony in litigation before this Court, informs the Court's judgment about the proper remedy for the EEOC's failure to conciliate the retaliation claims. Ordinarily, when the EEOC has failed to meet its duty to conciliate, "the preferred remedy is not dismissal but instead a stay of the action to permit such conciliation." *Golden Lender,* 2000 WL 381426, at *5 (quoting *New Cherokee,* 829 F.Supp. at 81). But when the EEOC fails to conciliate in good faith, courts have dismissed cases on that basis. *See Sears,* 650 F.2d at 19 (affirming dismissal when conciliation "patently inadequate"); *see also EEOC v. Asplundh Tree Expert Co.,* 340 F.3d 1256, 1261 (11th Cir.2003) (similar); *EEOC v. Pierce Packing Co.,* 669 F.2d 605, 609 (9th Cir.1982) (similar); *EEOC v. CRST Van Expedited, Inc.,* No. 07 Civ. 95, 2009 WL 2524402 (N.D.Iowa Aug. 13, 2009) (dismissing case for failure to notify and conciliate); *cf. Agro Distrib.,* 555 F.3d at 467–68 (concluding that district court was correct to grant summary judgment on failure-to-conciliate grounds).

Here, a stay would be inappropriate. The parties were unable, for nearly five months, to resolve their differences or even come to have any meaningful dialogue. Their correspondence indicates that their attitudes soured, and these claims were pursued by the EEOC (and added to the original complaint) after the EEOC had filed suit. A stay is a practical remedy to allow the parties to come back to the table and resolve the issues left aside, and it is typically granted early in the litigation process or when conciliation was ended prematurely. *See Die Fliedermaus,* 77 F.Supp.2d at 468 (staying action after failed conciliation when lawsuit "in its initial stages"); *New Cherokee,* 829 F.Supp. at 81; *Am. Express Publ'g Corp.,* 681 F.Supp. at 222 (stating that stay appropriate when conciliation "abruptly curtailed"). This is not the case here. In their non-effort to conciliate on the retaliation claims and in their more recent conduct of the litigation in general, the parties' conduct persuaded the Court that further attempts at conciliation of the retaliation claims would be futile. The Court, therefore, concludes that dismissal is the appropriate sanction in these circumstances.

For the reasons set forth above, Bloomberg's motion for summary judgment on the grounds of failure to conciliate [dkt. no. 103] is DENIED, except that it is GRANTED as to retaliation claims brought under section 704 of Title VII, 42 U.S.C. § 2000e–3.

## III. TIME–BARRED CLAIMS

The Court now turns to Bloomberg's other motion for summary judgment. [dkt. no. 99] This motion requires the Court to determine whether the "charge-filing" period set forth in section 706(e)(1) of Title VII, 42 U.S.C. § 2000e–5(e)(1), applies to bar claims that accrued prior to the initial discrimination and retaliation charges filed with the EEOC in this case.

### A. *Facts*

The following facts are not in dispute. Jill Patricot filed a charge of discrimination with the EEOC on March 24, 2006, alleging sex/pregnancy discrimination. (EEOC's Statement of Material Disputed Facts ("EEOC Facts") ¶¶ 9–10.) Of the three Charging Parties alleging discrimination here, Patricot's charge was the first to be filed. (*See id.* ¶¶ 9–14.) Based on her claims and others filed thereafter, the EEOC filed this lawsuit on September 27, 2007. (*Id.* ¶ 16.) In its complaint, the EEOC alleged that the three Charging Parties were victims of discrimination and that Bloomberg had engaged in a pattern

or practice of discrimination against non-clerical female employees. (*Id.* ¶¶ 17–18.) Eventually, the EEOC sought relief on behalf of seventy-nine individual discrimination claimants as part of this suit. (*Id.* ¶ 20.)

After the EEOC filed its discrimination suit, Maria Mandalakis, on January 30, 2008, filed the first retaliation charges with the EEOC in this case, along with discrimination charges. (*See id.* ¶ 15.) Based on these, and other, retaliation claims, the EEOC filed a Second Amended Complaint on March 31, 2009, which included allegations of retaliation on behalf of twenty-four identified claimants. (*Id.* ¶ 21–23.) The EEOC's retaliation claims do not include an allegation of a pattern or practice of retaliation. (*Id.* ¶ 24.)

### B. *Legal Landscape*

The EEOC is empowered to enforce Title VII upon the filing of a charge, which an EEOC commissioner may do in two different circumstances. *See* 42 U.S.C. § 2000e–5; *EEOC v. Shell Oil Co.*, 466 U.S. 54, 62, 104 S.Ct. 1621, 80 L.Ed.2d 41 (1984). First, under section 706 of Title VII, the EEOC may file a charge against a private employer on behalf of a "person or persons aggrieved" by an unlawful employment practice. 42 U.S.C. § 2000e–5(f)(1). Second, under section 707 of Title VII, the EEOC may file a charge against an employer that the EEOC has reason to think has engaged in a "pattern or practice" of discrimination. *Id.* § 2000e–6(e); *Shell Oil Co.*, 466 U.S. at 62, 104 S.Ct. 1621. Ultimately, the EEOC is empowered to sue if voluntary resolution is ineffectual, no matter the type of charge originally filed. 42 U.S.C. § 2000e–5(f)(1).

The EEOC's enforcement authority under section 706 is subject to several procedural requirements, *see id.* § 2000e–5(b),

(e)(1), which are incorporated by reference into the EEOC's authority to bring "pattern or practice" claims under section 707. *Id.* § 2000e–6(e). Section 707 states, "All such actions shall be conducted in accordance with the procedures set forth in [section 706] of this title." *Id.*

The procedure at issue in this motion is the "charge-filing" requirement of section 706. *See id.* § 2000e–5(e)(1). Section 706 provides, in relevant part:

> A charge under this section shall be filed within one hundred and eighty days after the alleged unlawful employment practice occurred ... except that in a case of an unlawful employment practice with respect to which the person aggrieved has initially instituted proceedings with a State or local agency with authority to grant or seek relief from such practice ... such charge shall be filed by or on behalf of the person aggrieved within three hundred days after the alleged unlawful employment practice occurred ....

*Id.* "The requirement ... that the charge be filed 'after' the practice 'occurred' tells [the Court] that a litigant has up to 180 or 300 days *after* the unlawful practice happened to file a charge with the EEOC." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 110, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002) (quoting 42 U.S.C. § 2000e–5(e)(1)); *see also Occidental Life Ins. Co. v. EEOC*, 432 U.S. 355, 371, 97 S.Ct. 2447, 53 L.Ed.2d 402 (1977) (stating that Congress's "concern for the need of time limitations" in Title VII "was directed entirely" to the charge-filing deadline). In New York, where the EEOC filed its charges, there is a state agency with jurisdiction to seek or grant relief on sex discrimination claims, 29 C.F.R. § 1601.80, so the 300-day filing period is the relevant time period in this case.[11] *See Mohasco Corp. v.*

---

11. There is nothing in the record to indicate that the EEOC notified the appropriate state

*Silver,* 447 U.S. 807, 816, 100 S.Ct. 2486, 65 L.Ed.2d 532 (1980); *cf. EEOC v. Comm'l Office Products Co.,* 486 U.S. 107, 123, 108 S.Ct. 1666, 100 L.Ed.2d 96 (1988) (stating that state statutes of limitations "do not determine the applicable federal time limit").

### C. *Analysis*

Bloomberg argues that the EEOC's claims, whether based on section 706 or 707, cannot include charges that accrued before the 300–day charge-filing period running from the earliest-filed charge involved here. (Bloomberg Br. at 3.) [12] This argument has three aspects; the charge-filing period's operation in (1) the section 707 pattern or practice of discrimination claims, (2) the section 706 discrimination claims, and (3) the section 706 retaliation claims. The Court analyzes the legal arguments in that order.

#### 1. Pattern or Practice of Discrimination Claim

Bloomberg advances the position that the language of section 707, which states that all "pattern or practice" actions "shall be conducted in accordance with the procedures set forth in" section 706, 42 U.S.C. § 2000e–6(e), incorporates the 300–day charge-filing requirement of section 706. (*Id.* at 4.)

■ Whether section 707 incorporates the charge-filing period of section 706 is a question that has divided district courts and has eluded the courts of appeals. *See, e.g., EEOC v. Freeman,* No. 09 Civ. 2573, 2010 WL 1728847, at *2 (D.Md. Apr. 27, 2010) (collecting cases). The Court only

answers the narrow question before it: whether, in a "pattern or practice" case involving allegations of discrete discriminatory acts, the section 706 charge-filing period applies.

Section 706 bars enforcement actions based on charges that were not timely filed with the EEOC. 42 U.S.C. § 2000e–5(e)(1); *Freeman,* 2010 WL 1728847, at *4. This procedure serves an important purpose: it provides repose for employers and prevents them from having to defend against long-stale claims. *See Occidental,* 432 U.S. at 371–72, 97 S.Ct. 2447. The plain language of section 707 incorporates this procedure into pattern or practice actions. 42 U.S.C. § 2000e–6(e); *Freeman,* 2010 WL 1728847, at *4; *EEOC v. Custom Cos., Inc.,* No. 02 Civ. 3768, 2004 WL 765891, at *8 (N.D.Ill. Apr. 7, 2004); *EEOC v. Optical Cable Corp.,* 169 F.Supp.2d 539, 546 (W.D.Va.2001). Nothing in the statute indicates that an EEOC commissioner, when filing charges on behalf of an individual claimant, is exempt from this requirement. *Freeman,* 2010 WL 1728847, at *4. Similarly, nothing in the statute indicates that Congress intended to allow the EEOC to revive otherwise stale individual damage claims. *Id.*; *EEOC v. Burlington Med. Supplies,* 536 F.Supp.2d 647, 659 (E.D.Va.2008). Thus, the charge-filing requirement operates in a section 707 case brought based on individual charges,

The EEOC's argument to the contrary is unavailing. It relies on *Occidental,* 432 U.S. at 360–61, 97 S.Ct. 2447, for the prop-

---

agency of its charge here. 29 C.F.R. § 1601.13(e) (stating that the EEOC "will notify" the state agency when an EEOC commissioner makes a charge and giving the state ten days to elect to first process the charge); *see Motorola, Inc. v. EEOC,* 460 F.2d 1245, 1245 (9th Cir.1972) (requiring the EEOC to allow state agency to pass on charges first). Nevertheless, the Court assumes that the EEOC

complied with this procedure and therefore availed itself of the longer 300–day charge filing period because Bloomberg, against which the longer period would work a detriment, argues that the 300–day period applies.

**12.** Citations to briefs in Part III of this opinion refer to the parties' briefs on the timeliness issues.

osition that the absence of any express "statute of limitations" in the text of section 707 means that section 707 contains no charge-filing requirement. (EEOC Br. at 3.) *Occidental* held that because section 706 contains no statute of limitations *to bring a lawsuit,* there is none; instead, the requirement *to bring a timely charge of discrimination* addresses the need for "time limitations in the fair operation" of Title VII. 432 U.S. at 370–71, 97 S.Ct. 2447. Here, section 707 explicitly cross-references the "procedures" in section 706 to address the need for time limitations, and Bloomberg does not argue that the EEOC is subject to a statute of limitations to bring a lawsuit. 42 U.S.C. §§ 2000e–5(e)(1), 2000e–6(e). The EEOC may not, at least in a case alleging discrete unlawful acts, seek relief for individuals who were not subject to an unlawful employment practice some time during the 300 days preceding the filing of the triggering charge.[13] *E.g., Freeman,* 2010 WL 1728847, at *4.

The cases concluding otherwise, and upon which the EEOC relies, are not persuasive. *E.g., EEOC v. Sterling Jewelers, Inc.,* No. 08 Civ. 706, 2010 WL 86376 (W.D.N.Y. Jan. 6, 2010); *EEOC v. LA Weight Loss,* 509 F.Supp.2d 527 (D.Md. 2007); *EEOC v. Mitsubishi Motor Mfg. of Am., Inc.,* 990 F.Supp. 1059 (C.D.Ill.1998). These cases rely on or emulate the reasoning of *Mitsubishi,* which primarily focused

on a distinction between pattern or practice charges and individual charges. *See* 990 F.Supp. at 1085. That court viewed pattern or practice actions as inherently different because the EEOC would be unable to identify any single discriminatory event to which the charge-filing period can be tied. *See id.* at 1085–86 (stating that pattern or practice cases are "not amenable to a timeliness determination"). In effect, *Mitsubishi* weighed this practical concern more heavily than the need for repose against defending stale claims. *See id.* at 1086–87.

To the extent that this distinction matters, it is not relevant here, where an individual charge precipitated the EEOC's enforcement action and where the claims are based on discrete acts that occurred on an individual basis.[14] *Cf. Cherosky v. Henderson,* 330 F.3d 1243, 1247–48 (9th Cir.2003) (citing *Elmenayer v. ABF Freight Sys., Inc.,* 318 F.3d 130, 132–33 (2d Cir.2003)) (rejecting effort to consider pre-limitations period claims when pattern or practice alleged individualized decisions). In this case, there are triggering events that are readily identifiable and amenable to a timeliness determination. The EEOC's complaint alleges discrimination on the basis of reductions in compensation, demotions, reductions in responsibility, and the like, and it seeks monetary relief on behalf of the individual claimants. (*See* Second Amended Compl. ¶ 7.) These are

---

**13.** The EEOC points to the legislative history of Title VII, the purpose of the statute, and its own "broad enforcement authority" to support its argument. Because the Court relies on the plain meaning of this unambiguous statute, its inquiry ends there. *See, e.g., United States v. Sabhnani,* 599 F.3d 215, 255 (2d Cir.2010). To the extent that these considerations are relevant, the Court agrees with the analysis of other district courts finding them not persuasive. *E.g., Freeman,* 2010 WL 1728847, at *4–5; *Custom Cos.,* 2004 WL 765891, at *9–10.

**14.** Indeed, the EEOC has presented no statistical evidence of discrimination in the summary judgment record. *Robinson v. Metro-N. Commuter R.R. Co.,* 267 F.3d 147, 158 & n. 5 (2d Cir.2001) (pointing to "heavy reliance" on statistical evidence in a pattern or practice claim); *Bell v. EPA,* 232 F.3d 546, 553 (7th Cir.2000) (stating that statistical evidence is the "core" of a pattern or practice case). To the extent that the EEOC offered such evidence thus far, the Court has excluded it in a prior order. *EEOC v. Bloomberg L.P.,* No. 07 Civ. 8383, 2010 WL 3466370, at *1 (Aug. 31, 2010).

discrete acts that occur on a certain date. *See Morgan*, 536 U.S. at 110–11, 113, 122 S.Ct. 2061; *see also* 42 U.S.C. § 2000e–2; *Optical Cable Corp.*, 169 F.Supp.2d at 547. And "[t]he law is clear that termination and promotion claims may not be based on discrete acts falling outside the limitations period." *Petrosino v. Bell Atl.*, 385 F.3d 210, 220 (2d Cir.2004). Thus, the practical concerns animating *Mitsubishi*'s refusal, "despite the language of § 707(e), which mandates adherence to the ... procedural requirements of § 706," 990 F.Supp. at 1085, to apply the charge-filing requirement to section 707 actions are not present here, *see id.* at 1085–86; *see also Custom Cos.*, 2004 WL 765891, at *8 (concurring with this assessment).

Although not a section 707 case, the principles elucidated in *National Railroad Passenger Corp. v. Morgan*, 536 U.S. at 113–17, 122 S.Ct. 2061, help to inform the Court's rationale. A hostile work environment case, like *Morgan*, involves a pattern of harassing conduct that "cannot be said to occur on any particular day." 536 U.S. at 115, 122 S.Ct. 2061; *see also Mitsubishi*, 990 F.Supp. at 1085–86 (relying on similar reasoning). Allegations involving this type of conduct can include pre-filing-period employment practices as long as one unlawful act occurred within the charge-filing period. *Morgan*, 536 U.S. at 117, 122 S.Ct. 2061. This approach makes sense where the conduct alleged is amorphous and necessitates a holistic view, and it maintains a period of repose with the requirement that an act occur in the charge-filing period.

Employment practices involving "discrete acts" are different. They occur on a date certain, and each alleged violation is subject to the charge-filing period. *Id.* at 113–14, 122 S.Ct. 2061. In those circumstances, there is no necessity to take a holistic view. *See id.* at 112–14, 122 S.Ct. 2061. This case involves discrete acts.

The fact that this section 707 action alleges a sort of serial violation involving discrete acts does not convert "related discrete acts into a single unlawful practice for purposes of timely filing," *Morgan*, 536 U.S. at 111, 114, 122 S.Ct. 2061. Therefore, the Court declines to follow the *Mitsubishi* line of authority and its progeny in this context. *See Burlington Med. Supplies*, 536 F.Supp.2d at 658–59 (declining to follow *Mitsubishi*'s reasoning); *Custom Cos.*, 2004 WL 765891, at *8 (similar); *Optical Cable Corp.*, 169 F.Supp.2d at 546–47 (similar).

The EEOC attempts to evade the charge-filing requirement by arguing that the "continuing violation" doctrine is a relevant exception here. (EEOC Br. at 8–17.) Although *Morgan* limited the class of claims to which the continuing violation doctrine applies, *see, e.g., Shomo v. City of New York*, 579 F.3d 176, 181 (2d Cir.2009), it was not presented with, and therefore did not decide, "the timely filing question" in a pattern or practice case. *Morgan*, 536 U.S. at 115 n. 9, 122 S.Ct. 2061. Nevertheless, the doctrine remains available in cases where the violation is " 'composed of a series of separate acts that collectively constitute one unlawful employment practice.' " *Washington v. County of Rockland*, 373 F.3d 310, 318 (2d Cir.2004) (quoting *Morgan*, 536 U.S. at 111, 122 S.Ct. 2061); *see Port Auth. Police Asian Jade Soc'y of N.Y. & N.J., Inc. v. Port Auth. of N.Y. & N.J.*, 681 F.Supp.2d 456, 466 (S.D.N.Y.2010) (Cedarbaum, J.).

The case at bar is not one of this ilk. If anything, it resembles a serial violation situation, which the Supreme Court concluded is not susceptible to the continuing violation exception. *Morgan*, 536 U.S. at 114, 122 S.Ct. 2061. The EEOC in this case seeks to link "together a series of decisions ... under the label of pattern or practice," but "that does not change the fact that each decision constituting the pat-

tern or practice is discrete." *Freeman*, 2010 WL 1728847, at *6; *see Butts v. N.Y. City Dep't of Housing Pres. & Dev.*, No. 00 Civ. 6307, 2007 WL 259937, at *7 (S.D.N.Y. Jan. 29, 2007). Indeed, the complaint is illustrative. The EEOC makes no allegation there that discrimination was Bloomberg's "standard operating procedure," *Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 336, 97 S.Ct. 1843, 52 L.Ed.2d 396 (1977), or otherwise allege a systemic policy aside from using the term "pattern or practice," [15] *see Blake v. Bronx Lebanon Hosp. Ctr.*, No. 02 Civ. 3827, 2003 WL 21910867, at *5 (S.D.N.Y. Aug. 11, 2003) ("[A] plaintiff does not properly allege an ongoing discriminatory policy simply by invoking the magic words 'pattern' or 'practice.' ").

Affixing the "pattern or practice" label to a complaint does not ipso facto make a case one where "separate acts ... collectively constitute one unlawful employment practice." *Washington*, 373 F.3d at 318; *see, e.g., Jade Soc'y*, 681 F.Supp.2d at 466 (analyzing the type of violations to determine whether they constituted a single practice); *Milani v. IBM Corp.*, 322 F.Supp.2d 434, 452–53 (S.D.N.Y.2004). Instead, courts inquire into the type of alleged unlawful practice to determine if the continuing violation doctrine applies.

For example, in *Jade Society*, this Court concluded that an employment policy that had a disparate impact upon minority employees constituted a "single, ongoing unlawful employment practice," entitling the plaintiffs to seek relief on claims outside the charge-filing period. 681 F.Supp.2d at 464, 466. Although the EEOC asks the Court to follow suit, the claims involved in this case are not analogous. Here, the EEOC seeks redress based on several discrete employment actions, which are easily identifiable, and asks for individualized monetary relief to "make the Claimants whole." (Second Amended Compl. ¶¶ C–E.) This is in stark contrast to an allegation that a policy that is, in effect, a single practice necessitating proof of "events extended over time," as in *Jade Society*, 681 F.Supp.2d at 463. To be sure, the EEOC strung together several allegations from employees who each experienced discrete, potentially discriminatory employment actions here. But that approach is nothing more than "[l]inking together a series of decisions" notwithstanding the fact that they are discrete instances of alleged discrimination. *Freeman*, 2010 WL 1728847, at *6; *see Morgan*, 536 U.S. at 114, 122 S.Ct. 2061 (rejecting "serial violations" theory); *Crosland v. City of New York*, 140 F.Supp.2d 300, 308 (S.D.N.Y.2001) ("It is well-established that transfers, demotions, failure to compensate adequately, and failure to promote are all discrete acts which do not constitute a continuing violation.").

*Jade Society* was correct to employ the pattern or practice label to include otherwise time-barred *claims* when "separate acts ... constitute [d]one unlawful employment practice." *Washington*, 373 F.3d at 318. But here, the allegations are different, as is the nature of what the EEOC seeks to do. The "pattern or practice" alleged should not be used to allow the EEOC to seek relief on behalf of otherwise time-barred *parties* when the challenged practice involves discrete acts of discrimination.[16] *See Freeman*, 2010 WL 1728847,

---

**15.** The Court does not suggest that the EEOC did not bring a pattern or practice case. It may prove such a case with evidence of specific instances of discrimination. *Robinson v. Metro–N. Commuter R.R. Co.*, 267 F.3d 147, 158 (2d Cir.2001).

**16.** The Court makes no judgment about whether this analysis applies to a pattern or practice action involving discrimination that will go undiscovered only until a pattern emerges.

at \*6; *see also Jade Soc'y,* 681 F.Supp.2d at 466 (stating that "acts" outside the charge-filing period properly considered). The charge-filing period is the sole mechanism that Congress used to alert employers of potential claims in a timely fashion. *See Occidental,* 432 U.S. at 371–72, 97 S.Ct. 2447. The EEOC, at least when alleging individual, discrete discrimination events, cannot make an end run around that period to add stale claims.[17] *See Freeman,* 2010 WL 1728847, at \*6; *EEOC v. CRST Van Expedited, Inc.,* 615 F.Supp.2d 867, 878 (N.D.Iowa 2009); *EEOC v. Wyndham Worldwide Corp.,* No. 07 Civ. 1531, 2008 WL 4527974 (W.D.Wash. Oct. 3, 2008).

To summarize: this case is not one that involves claims that by "[t]heir very nature involve repeated conduct." *Morgan,* 536 U.S. at 115, 122 S.Ct. 2061. The EEOC makes allegations of demotions, reductions in pay and responsibility, and other specific negative employment actions following the claimants' return from maternity leave. These are paradigmatic "discrete acts" that are subject to the charge-filing requirement.[18] Because the Court holds that, in this context, the charge-filing requirement applies to the EEOC's section 707 claims, any section 707 claims based on alleged discrimination that occurred before May 28, 2005–300 days prior to the filing of the first discrimination charge (filed March 24, 2006)—are time-barred. The EEOC remains free to pursue injunctive relief as well as relief for individuals whose claim of discrimination accrued in accordance with the charge-filing requirement.

### 2. Discrimination Claims Under Section 706

Section 706 contains a charge-filing requirement. 42 U.S.C. § 2000e–5(e)(1). The EEOC does not dispute that the 300–day charge filing period applies to its section 706 claims. (EEOC Br. at 18.) It relies, however, on the continuing violation doctrine to save any charges that accrued before May 28, 2005, which is 300 days prior to the filing of the initial discrimination charge on March 24, 2006. (*Id.*; Bloomberg Br. at 9.) For the reasons stated above in Part III.C.1., the continuing violation doctrine is inapplicable to these claims. Any charges under section 706 based on alleged unlawful employment practices before May 28, 2005, are time barred.

### 3. Retaliation Claims

Although the EEOC's retaliation claims were dismissed for failure to conciliate, *supra* Part II.B.2., the Court, in the alternative, briefly addresses the timeliness of those claims, which do not involve a pattern or practice allegation.

Here again, Bloomberg, relying on section 706's charge-filing requirement, argues that claims that accrued prior to the 300–day filing period extending backward from the initial retaliation charge (filed January 30, 2008) are time-barred. (Bloomberg Br. at 14.) The EEOC argues that because of its "uniquely broad authority," it can investigate and prosecute claims without regard to section 706's charge-filing deadline. (EEOC Br. at 19.) It also attempts to render all retaliation claims timely by way of the continuing violation doctrine. (*Id.* at 19–20.)

---

**17.** The EEOC is not barred, however, from using "prior acts as background evidence in support of a timely claim." *See Morgan,* 536 U.S. at 113, 122 S.Ct. 2061.

**18.** Although the Court does not rely on this fact, it is also telling that the EEOC focused its conciliation efforts on obtaining individual monetary awards that differed, sometimes substantially, from claimant to claimant, rather than on changes in company policy.

██ The EEOC's first argument is plainly wrong. Section 706, under which the EEOC brought the retaliation claims, requires a charge to be filed within 180 or 300 days of the alleged unlawful employment practice, 42 U.S.C. § 2000e–5(e)(1), as the EEOC concedes. (EEOC Br. at 8.) An agency may not disregard a clear statutory command. *E.g., Lincoln v. Vigil*, 508 U.S. 182, 194, 113 S.Ct. 2024, 124 L.Ed.2d 101 (1993); *Ming Lam Sui v. INS*, 250 F.3d 105, 113 (2d Cir.2001).

██ Its second argument fares no better. The EEOC has not filed a pattern or practice action with respect to its retaliation claims, and those claims involve individual allegations of discrete acts. The continuing violation doctrine has no application in individual lawsuits based on discrete acts. *Shomo*, 579 F.3d at 181 (citing *Morgan*, 536 U.S. at 114, 122 S.Ct. 2061). The doctrine thus does not apply here. The EEOC's argument that it has alleged an overarching retaliatory practice sufficient to constitute something akin to a hostile work environment (EEOC Br. at 19) goes too far. The EEOC's retaliation claims are based on individual, discrete employment decisions. (*Id.* at 20 (citing refusal to promote, denial of transfer, reduction in compensation).) For the same reasons discussed *supra*, such claims are not amenable to the application of the continuing violation doctrine. The EEOC's retaliation claims that accrued prior to April 5, 2007 (300 days before the first retaliation charge was filed) are time barred.

### D. *Conclusion*

The upshot is as follows. Any of the EEOC's discrimination claims, whether based on section 706 or 707, that are based on conduct that happened prior to May 28, 2005, are time-barred. In the alternative to the Court's dismissal of the retaliation claims for failure to conciliate, any of the EEOC's retaliation claims that are based on conduct that happened prior to April 5, 2007, are time barred.

Specifically, fourteen discrimination claimants ended their employment relationships with Bloomberg prior to May 28, 2005. (*See* EEOC Facts ¶¶ 25–38; Bloomberg Br. at 2 n. 2 (listing claimants).) It is therefore impossible that they experienced actionable discrimination, and their claims are dismissed. The EEOC's suit contains thirty discrimination claimants (*see* Bloomberg Br. at 11 n. 3) with allegations involving discrete acts that may have happened prior to May 28, 2005. Any of their claims based on such acts are time-barred and dismissed on the same basis. Because the record is unclear as to the specific claimants and claims that fall within the charge-filing period, the Court leaves it to the parties to vet out the untimely claims.

Finally, the EEOC alleges retaliation based on events that occurred prior to April 5, 2007, on behalf of seventeen claimants. (*See* Bloomberg Br. at 18 n. 4.) To the extent that these retaliation claims are based on such events, they are dismissed as time-barred in the alternative to their dismissal for failure to conciliate. Here again, the record is not clear as to which claims and claimants fall within the charge-filing period. The Court leaves it to the parties to determine which claims are timely.

For the reasons stated above, Bloomberg's Motion for Summary Judgment as to Time–Barred Claims [dkt. no. 99] is GRANTED.

The parties shall confer and inform the Court by letter no later than November 8, 2010 how they propose to proceed.

SO ORDERED.

### *MEMORANDUM & ORDER*

Plaintiff, Equal Employment Opportunity Commission ("EEOC"), moves for re-

consideration of this Court's October 25, 2010, opinion and order granting summary judgment in favor of Defendant Bloomberg L.P. on the basis that certain alleged discrimination claims are time barred. *EEOC v. Bloomberg L.P.*, No. 07 Civ. 8383, 2010 WL 4237077 at *20, at 650 (S.D.N.Y. Oct. 25, 2010); *see* Fed.R.Civ.P. 59(e). The Court presumes familiarity with the facts outlined in the October 25, 2010, opinion.

 To succeed on a motion for reconsideration, "the party seeking reconsideration must present controlling decisions or facts that the court originally overlooked." *In re M/V Rickmers Genoa Litig.*, 643 F.Supp.2d 553, 555 (S.D.N.Y. 2009). However, "[a] party may not relitigate an already decided issue on a motion for reconsideration," *id.*, because a mere disagreement with the Court's legal determination is not a valid basis for reconsideration. *United States v. Kerik*, 615 F.Supp.2d 256, 276 n. 27 (S.D.N.Y.2009). Instead, any overlooked matters must be ones "that might reasonably be expected to alter the conclusion reached by the court." *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir.1995).

 The EEOC argues first that the Court improperly presupposed that the EEOC did not bring a "pattern or practice" of discrimination case. (EEOC Br. at 3, 5.) This argument amounts to a mere disagreement with the Court's legal determination; the EEOC repeats the arguments it made to this Court in its summary judgment papers. The Court rejected those arguments, and the EEOC cannot now relitigate the issue. *Bloomberg*, 2010 WL 4237077, at 645–49. Nothing in the Court's opinion presumes any-

thing about whether the EEOC alleged a pattern or practice of discrimination. Indeed, the Court stated that the EEOC "may prove [its pattern or practice case] with evidence of specific instances of discrimination." *Id.* at 648 n. 15. Rather, the opinion rejected the EEOC's arguments about the continuing violation doctrine. *Id.* at 647–49.

Most importantly, the EEOC apparently failed to appreciate the language in the Court's opinion. It expressly states that the Court did not presuppose that the EEOC did not bring a pattern or practice case. *Id.* at 648 n. 15 ("The Court does not suggest that the EEOC did not bring a pattern or practice case.").

 The EEOC's second argument rests on more fertile ground. Although the EEOC did not point to the Lilly Ledbetter Act in its original summary judgment papers, the law applies to some claims here. *See* Ledbetter Act, Pub. L. No. 111–2, § 3, 123 Stat. at 5–6 (codified at 42 U.S.C. § 2000e–5(e)(3)); *Vuong v. N.Y. Life Ins. Co.*, No. 03 Civ. 1075, 2009 WL 306391, at *9 (S.D.N.Y. Feb. 6, 2009). Bloomberg agrees: "Section 706 [as amended by the Ledbetter Act] allows EEOC to assert claims based on compensation decisions that took place prior to May 28, 2005, as long as the Claimant remained employed by Bloomberg and received a paycheck impacted by that previous decision on or after that date." (Bloomberg Br. at 6–7.) Therefore, to the extent that the Court's prior opinion could be read to grant summary judgment as to claims based on compensation decisions, it is clarified to exclude from its ambit such claims.[1] As Bloomberg points out, "[b]ack

---

1. EEOC did not argue in its original summary judgment papers that acts that could indirectly impact compensation are rendered timely by the Ledbetter Act. (*See* Bloomberg Br. at 7.) It may not do so now. "[A]ny controlling decisions or factual matters presented must have been put before the court in the underlying motion." *M/V Rickmers Genoa*, 643 F.Supp.2d at 555.

pay for such claims is limited to the period after March 24, 2004, which is two years before the date of Jill Patricot's charge, the earliest charge that gave rise to EEOC's lawsuit." (*Id.* at 7.) The Court agrees. *See* 42 U.S.C. § 2000e–5(e)(3)(B) (limiting recovery of back pay to two years preceding the filing of the charge).

Based on the foregoing reasoning, the EEOC's motion for reconsideration [dkt. no. 169] is GRANTED in part and DE-NIED in part. Upon reconsideration, the Court clarifies its prior opinion and order to exclude from summary judgment claims based on compensation decisions that took place prior to May 28, 2005, pursuant to the Ledbetter Act. *See* 42 U.S.C. § 2000e–5(e)(3).

The parties shall confer and inform the Court by letter no later than December 10, 2010, how they propose to proceed.

SO ORDERED.